(Nos. 43086, 43087, 43088 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MICHEL LEE, JR., *et al.*, Appellants.

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

Bruce L. Bower and David E. Garner, of Chicago, (Winston, Strawn, Smith & Patterson, of counsel,) for appellants.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and George M. Elsener, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

A judge in the circuit court of Cook County found Michel Lee, Jr., Donald Wade, and L. A. Brown guilty of the unlawful possession of firearms ammunition. (Ill. Rev. Stat. 1969, ch. 38, par. 83—2.) Each was sentenced to serve a term of one year in an institution other than a penitentiary. The convictions are challenged upon the grounds that the trial court improperly denied a motion to suppress certain evidence which was the product, it is claimed, of an unlawful search and seizure, that the complaints against the defendants failed to state a crime and that the evidence was insufficient to establish the guilt of the defendants beyond a

reasonable doubt. The constitutional questions offered give this court jurisdiction on direct appeal. Ill. Rev. Stat. 1969, ch. 110A, par. 603.

On December 9, 1969, Officer Thomas Brennan and his partner Officer Thompson of the Chicago Police Department were informed by a superior officer that it had been reported that gangs in the area they were assigned to patrol were to engage that night in what was described as a "gang war." While on duty in their squad car at approximately 9:30 P.M. that evening the officers heard several loud reports which, according to Officer Brennan's testimony, sounded like revolver shots or shotgun discharges. They did not see the incidents. Within two minutes and about two blocks from where the officers heard the discharges they observed the defendants walking on the sidewalk in a group with three other young men. There was no one else in the vicinity. As the officers approached the group, they observed that four of the men were wearing red tams or berets, which was the type of headgear worn by a group or gang which Officer Brennan believed, he testified, might be involved in the gang war anticipated that evening.

Based on the information received from their superior officer and their own observations, the officer testified, they stopped the six men and first talked with them briefly. The officers then subjected each of the group to what was described at trial as a pat search for the officers' protection. L. A. Brown was the first searched and the officers found he was wearing an empty shoulder holster beneath his outer coat. They also found a shotgun shell in his coat pocket. Officer Brennan testified that the other men were then searched for the purpose of locating the gun which the officers believed was in the possession of one of them. No gun was found but gun shells were discovered in the possession of Wade, Lee and a third man, who did not appeal from his conviction in the circuit court. There was nothing of significance found in the search of the other two men.

The defendants contend that their convictions must be set aside because they rest upon evidence obtained through searches and seizures which violated the fourth amendment of the constitution of the United States and section 6 of article II of the constitution of Illinois. (Ill. Const. art. II, sec. 6.) It is said that when the officers stopped the defendants no probable cause for arrest existed and that, therefore, the searches cannot be justified as having been incidental to a valid arrest. Nor, they continue, can justification for these searches be found in the United States Supreme Court's opinions in *Terry* v. *Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, or *Sibron* v. *New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. The police, the defendants say, lacked sufficient grounds under *Terry* for stopping the defendants, and far exceeded here the limited searches authorized in *Terry* and *Sibron.* Although the State does not expressly concede the absence of probable cause to arrest, it does not attempt to justify the searches on the basis of a valid arrest. Relying principally on *Terry* v. *Ohio,* the police, the State argues, had sufficient facts to conclude reasonably that criminal activity was afoot, as *Terry* put it, and it was therefore not constitutionally offensive to stop the defendants for purposes of investigation. Too, the State claims the police belief that the defendants may have been armed and dangerous was reasonable, as were the searches conducted.

Considering whether the searches can be justified on the authority of *Terry* v. *Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, we observe that there the Supreme Court said: "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating the behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the

initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (392 U.S. 1, 30, 20 L. Ed. 2d 889, 911.) The justification for a search under the circumstances described in *Terry* is the protection of the policeman and others nearby. Such a search is subject to the limitations of the fourth amendment's proscription of unreasonable searches and seizures and must, therefore, be "reasonably related in scope to the justification for [its] initiation." (*Terry* v. *Ohio,* 392 U.S. 1, 29, 20 L. Ed. 2d 889, 910; see also, *Warden, Maryland Penitentiary* v. *Hayden,* 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, (Mr. Justice Fortas, concurring).) Thus, the type of search authorized in *Terry* is one confined in scope to an intrusion reasonably designed to discover weapons or objects capable of use as weapons. (*Terry* v. *Ohio,* 392 U.S. 1, 29; 20 L. Ed. 2d 889, 911; *Sibron* v. *New York,* 392 U.S. 40, 65, 20 L. Ed. 2d 917, 936.) A search with this purpose, under *Terry,* may not be a general search.

Against this background we must examine whether there were adequate grounds to stop the defendants for questioning and for concluding that the defendants and the others in their group may have been armed. *Terry* says that the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [*i.e.,* the stop]." (*Terry* v. *Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906.) Too, the officer's conduct must be assessed against an objective standard: "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (*Terry* v. *Ohio,* 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906.) Considering this, we judge that

the officers here acted properly in stopping the defendants. Under the circumstances a conclusion by the officers that criminal activity involving the defendants was "afoot" was not unreasonable. Having been alerted that gang-related violence was expected in their area, the two officers, while on patrol, heard the shotgun blasts or revolver shots. They observed the defendant's group in a matter of minutes and some two blocks from where they heard the gun reports. They were the only persons seen by the officers in the immediate vicinity. Four of the six men wore headgear of the type worn by one of the gangs in the area. Realistically viewed, the situation was one that called for further police investigation. Stopping the defendants and the others in the group for questioning was, we judge, police conduct permitted under *Terry*. Moreover, in the light of the violent nature of the suspected criminal activity and the other circumstances, the officers were justified in believing that the men they were confronting might be "armed and presently dangerous." At this point they were entitled, under *Terry*, to conduct for their own protection a limited search of the men who had been stopped.

We must next consider whether the nature and scope of the subsequent searches exceeded, as the defendants contend, what was approved in *Terry*. Officer Brennan testified that for their own protection he and his partner first gave the defendants a pat search. The defendants' argument on appeal is based on their supposition that there was an initial general search of the defendants to uncover the concerned evidence. However, the record doesn't support this supposition by appellate counsel. The record, referring to the testimony of Officer Brennan, shows only the pat search of L. A. Brown to discover the gun holster and the shotgun shell. He then testified that the others, including Lee and Wade, were subjected to pat searches. The trial court, who had heard the evidence, at the hearing on the motion for a new trial said that "pat searches" had been made.

Neither the direct testimony nor the cross-examination shows specifically that the officer felt the gun holster or shell while patting-down Brown. The officer ultimately did, it appears, reach inside the defendant's outer coat and seize the shotgun shell and the empty shoulder holster. A reasonable reconstruction of the sequence of events would be that Officer Brennan reached within Brown's outer coat only after the holster and shell had been detected from the pat-down. The objects were hard and of appreciable size and their presence apparent from touching the outer clothing. The shell could be reasonably identified by the officer in his pat search as some object capable of being used as a weapon. The shape of the holster and the location permitted its ready identification. Anyone, and especially a police officer, would be alerted to the probable presence of the dangerous weapon suggested by the finding of the holster. Under these circumstances, we judge that the officer's conduct in reaching within Brown's outer clothing to secure the objects was consistent with the Supreme Court's holding in *Terry*. The scope of the search did not exceed the boundary of its initial justification—the protection of the officers. (*Terry* v. *Ohio*, 392 U.S. 1, 26, 29, 20 L. Ed. 2d 889, 908, 910; compare *Sibron* v. *New York*, 392 U.S. 40, 65, 20 L. Ed. 2d 917, 936.) We reach the same conclusion as to the other defendants. The pat searches shown by the record would appear to have disclosed the hard, sizeable objects. These objects could be fairly viewed as instruments capable of being used as weapons. For their own safety the officers were justified in investigating the exact nature of these objects.

It is next contended by the defendants that the searches and seizures were illegal under what has been described as the Illinois "Stop and Frisk" statutes. (Ill. Rev. Stat. 1969, ch. 38, pars. 107—14, 108—1.01.) It is said by the defendants that, with respect to the justification for an investigatory stop, these statutes impose stricter requirements than does the fourth amendment. We cannot agree. The statutes

concerned were enacted in the legislative session next following the adoption of *Terry* and *Sibron*. Too, as the defendants concede, our statutes are patterned on and follow almost identically the New York statute involved in *Sibron*. (*Sibron* v. *New York,* 392 U.S. 40, 43, 20 L. Ed. 2d 917, 923, 924.) We judge that the intent of the legislature was to codify the holdings in *Terry* and *Sibron*. We do not conclude under all the circumstances that the Illinois statute was designed to be more restrictive than the Supreme Court's delineation in *Terry* and *Sibron*. Nor can we say that the conduct of the officers here was beyond that authorized by our statute.

It is next argued that even if it be assumed that the searches and seizures were reasonable under the constitutions and were not violative of the statute, the evidence of the shotgun shells nevertheless should have been suppressed. The defendants reason that the fourth amendment and the statute permit the introduction only of weapons into evidence, the possible presence of which was the justification for a protective search. Under the fourth amendment it has long been held that contraband not searched for but discovered during a valid search may be seized and is admissible in evidence. (See *Abel* v. *United States,* 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683; *Harris* v. *United States,* 331 U.S. 145, 91 L. Ed. 1399, see also LaFave, "Street Encounters and the Constitution," 67 Mich. L. Rev. 39, 92 (1968).) We perceive nothing in *Terry* to suggest that this should not be held in the case of a "stop and frisk." The Court of Appeals for the District of Columbia in a post-*Terry* opinion has stated: "The need to seize weapons and the potential instruments of crime, thus indicated as relevant to the scope of a search, does not limit its admissible fruit to weapons if conducted consistently with a proper search for weapons. *Cf. Worthy* v. *United States* (D.C. cir. 1968), 409 F.2d 1105, 1109.

Neither do we consider that there is such a limitation

on admissibility to be found under our statute. There is no express limitation imposed on materials seized and we find none suggested.

Another claim of error is that the convictions must be reversed because the complaints under which the defendants were charged were fatally defective in that they failed to charge an offense as required by section 111—3 of the Criminal Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 111—3.) The statute in effect at the time of the offense here provided, in part: "No person may acquire or possess any firearm or any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card previously issued in his name by the Department of Public Safety under the provisions of this Act." (Ill. Rev. Stat. 1967, ch. 38, par. 83—2.) The complaints charged each defendant with unlawful possession of firearm ammunition in that each was charged with having "knowingly carried concealed on or about his person a quantity of 12 Gauge Shot-Gun Shells, no person may acquire or possess any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card previously issued in his name by the Department of Public Safety under the Provisions of this Act." The complaints also alleged the date and location of the offense. The defendants say that the complaints did not charge a failure to have possession of a firearm owner's identification card, and further that the language of the complaints is unintelligible. While the complaints cannot be regarded models in draftsmanship, they are to be tested for sufficiency by a standard of clarity rather than by one of stylistic excellence. (See *People* v. *Krause,* 291 Ill. 64.) In this regard, it is sufficient to allege an offense in the language of a statute if its language so far particularizes the offense that by that alone an accused is informed with reasonable certainty of the precise offense with which he is charged. (*People* v. *Mills,* 40 Ill.2d 4.) Since no claim is made that

the statute does not sufficiently particularize the offense, we consider the complaints against the background of the statute. They charged the defendants with knowingly possessing a quantity of shotgun shells, which are within the statutory definition of firearm ammunition. (Ill. Rev. Stat. 1967, ch. 38, par. 83—1.1.) Using the statutory language, the complaints, we believe, also set forth, albeit obliquely and awkwardly, that none of the defendants had in their possession a firearm owner's identification card previously issued in his name by the Department of Public Safety. Thus, as the elements of the offense defined in section 83.2 were charged in the complaints, they were not defective for failure to charge the nature and elements of the offense and were, therefore, not subject to dismissal under section 114—1(a)(8) of the Code of Criminal Procedure. Ill. Rev. Stat. 1969, ch. 38, par. 114—1(a)(8).

Lastly, several contentions are raised that the evidence was insufficient to sustain the convictions. A claim is made that the State failed to meet its burden of proving the defendants guilty beyond a reasonable doubt since it did not demonstrate that the shotgun shells introduced into evidence were in fact "live" shells; that is, shells capable of being discharged. The statute defining firearm ammunition provides in part: " 'Firearm Ammunition' means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm * * *." (Ill. Rev. Stat. 1969, ch. 38, par. 83—1.1(4).) The statutory requirement was that the ammunition be "designed to be used or adaptable to use in a firearm." Whether the shells introduced at trial were of this character was for the trier of fact to decide. (*Cf. People v. Faginkrantz,* 21 Ill.2d 75, 79.) We would add that there is nothing to suggest that the shells here were not in fact "live".

It is said, too, that the State failed to meet its burden of proof in that it did not prove that the defendants were not

unemancipated minors in the custody and immediate control of a parent or legal guardian or other person *in loco parentis,* who possessed a currently valid firearm identification card. The provisions of the statute do not apply to such minors (Ill. Rev. Stat. 1967, ch. 38, par. 83—2(b)(10).) This argument, however, ignores Officer Brennan's testimony, that the defendants, when stopped, were in the company of only two other youths, who were not claimed by the defendants to be parents or guardians. No defendant, when testifying, made the claim that he was in the custody or control of his parent, legal guardian or other person *in loco parentis* to him when he was stopped.

Finally, it is argued that the evidence does not support beyond a reasonable doubt that the defendants Wade and Lee were in possession of shotgun shells. On this question the officer's testimony is in contradiction with the testimony of the defendants. The matter of witnesses' credibility is one for the trier of fact, and considering the evidence we do not find a reasonable doubt of the defendants' guilt. See *People v. Nicholls,* 44 Ill.2d 533, 540.

For the reasons given, the judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*