(No. 49344.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JAMES J. McGOWAN, Appellant.

*Opinion filed November 30, 1977.*

Stephen A. Elman, of Peoria, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay and George C. Sorensen, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE CLARK delivered the opinion of the court:

The defendant, James J. McGowan, was convicted of one count of unlawful use of a weapon, a Class A misdemeanor (Ill. Rev. Stat. 1973, ch. 38, pars. 24—1(a)(4), 24—1(b)), in the circuit court of Peoria County. The Appellate Court, Third District, affirmed (45 Ill. App. 3d 61), and we granted the defendant's petition for leave to appeal.

The only questions before us in this appeal concern whether the trial court erred in denying the defendant's motions to suppress certain evidence (including the weapon in question). The defendant initially made a pretrial motion to suppress that evidence, then repeated his objection both at trial and in a post-trial motion. He contends that said evidence was obtained in violation of two provisions of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, pars. 107—14, 108—1.01) governing the temporary questioning of suspects without arrest, and searches during such questioning. We find that the officers complied with those provisions, and we therefore affirm the defendant's conviction.

The facts adduced at the suppression hearing are not complicated. On Sunday, April 13, 1975, at approximately 12:50 a.m., Peoria police officers George Fulton and Orlando Allen were emerging from the city parking garage on the 1700 block of Southwest Washington Street in Peoria, when Fulton observed two men on the sidewalk. The two appeared to have emerged from an area next to the Hiram Walker building on Washington Street. They both were wearing black clothing (though one of them also wore a green shirt under a black sweater and the other wore a black stocking cap). The men walked across Washington Street, then stopped when asked to do so by Officer Fulton. Fulton identified himself as a police officer, then explained to the men that he was "checking

them out" because they were in an area plagued by a high burglary rate. As he spoke, Fulton also began to pat down the defendant's clothing to search for weapons, and discovered a .22-caliber automatic pistol concealed under defendant's belt, which he seized.

Fulton testified that he stopped the men because their black clothing, the hour of night, and his knowledge of the area had led him to conclude that the men either had just committed or were about to commit a burglary. In support of that conclusion, Fulton testified that, although he had received no reports of burglaries in the previous few hours, he knew from having patrolled the area many times that it was a commercial and industrial area which had suffered a number of burglaries. The defendant offered no evidence in rebuttal of Fulton's contention regarding the number of burglaries in the area.

Fulton further stated that it was unusual (though "not highly unusual") to see people in that area at that time of night, with the possible exception of hitchhikers, but that defendant did not appear to have been hitchhiking. Officer Fulton admitted, however, that he was aware that there was a bar (Penn's Tavern), open until 1 a.m., located only two blocks from where he stopped the defendant, and that defendant was headed in the general direction of the bar when stopped.

Fulton testified that he patted down the defendant's clothing for weapons because he suspected defendant to be a burglar, and believed that many burglars carry dangerous weapons.

The only questions before us are (1) whether Fulton had adequate grounds to stop the defendant, and (2), if so, whether he had adequate grounds to pat down the defendant's clothing for weapons. The seminal cases on these questions are *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889.

Illinois has codified the holdings of those two cases in sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963. (*People v. Lee* (1971), 48 Ill. 2d 272, 279.) Thus, subsequent decisions of the United States Supreme Court interpreting *Terry* and *Sibron* are persuasive in questions arising under our statute. Sections 107—14 and 108—1.01 provide as follows:

"Sec. 107—14. Temporary Questioning without Arrest. A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Added by act approved Aug. 21, 1968, 1968 Ill. Laws 218, effective Aug. 21, 1968.)

"Sec. 108—1.01. Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Added by act approved Aug. 21, 1968, 1968 Ill. Laws 218, effective Aug. 21, 1968.)

Thus, the issues may be restated as follows: (1) Whether it was reasonable for Officer Fulton to infer that defendant had committed or was about to commit a burglary; and, if so, (2) whether it was reasonable for Officer Fulton to suspect that he was in danger of attack upon stopping the defendant.

To have been "reasonable," Fulton's inference that defendant was involved in a recent or imminent burglary must have been based on more substantial facts and

circumstances than would support a mere hunch, yet less substantial than those necessary to support a finding of probable cause to arrest or search the defendant. (See *Terry v. Ohio* (1968), 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.) "Reasonable" in this context also means that the facts and circumstances must be specific and articulable. (392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.) Viewed as a whole, they must lead to the conclusion that the situation confronting the police officer is so far removed from the ordinary that any competent police officer would be expected to act quickly to maintain the status quo, rather than to observe the situation further.

While this is admittedly a close case, we agree with the appellate and circuit courts that the State has met its burden of proof on this question. On Sunday at 12:50 a.m. when Fulton first spotted the defendant, Penn's Tavern apparently was the only business establishment open in this otherwise deserted commercial and industrial area. The defendant and his companion were about two blocks away from the tavern, which was due to close in 10 minutes, leaving them barely enough time to reach the tavern and have a fast drink. It therefore would have appeared somewhat unlikely that the suspects were on their way to the tavern. It also appeared unlikely that they were hitchhiking. Thus, on the basis of his experience patrolling the area, Fulton knew that the suspects were in an unlikely place at an unlikely time.

Fulton also knew that the suspects' black clothing would have been highly unusual for persons merely walking down the street at night, but not at all unusual if the suspects were engaged in some kind of surreptitious activity. Officer Fulton knew of at least one form of surreptitious activity that unfortunately was not uncommon in this neighborhood—burglary. Thus, while it is possible that the defendant and his companion were

merely on their way to Penn's Tavern to have a fast drink before closing time, we agree that it was much more likely that persons dressed in black, walking in the dead of night through an otherwise deserted commercial and industrial area which had been plagued by burglaries, had just committed or were about to commit a burglary. Under these circumstances, the suspects easily might have eluded the officers had the officers attempted to observe the two suspects further rather than stopping them immediately. Hence, we agree that Officer Fulton's inference of an imminent or recent burglary was reasonable, and that stopping the defendant therefore was reasonable under the circumstances.

We also hold that it was reasonable for Officer Fulton to suspect that he and his partner were in danger of attack. It is not unlikely that a person engaged in stealing another person's property would arm himself against the possibility that another person will appear unexpectedly and object strenuously. Thus, since we find Fulton's original suspicion to have been reasonable, we also find it reasonable for him to have concluded that the defendant was armed. It follows inevitably, we think, that it also was reasonable for Officer Fulton to assume that if the man he stopped were an armed burglar, he would not submit peacefully to questioning. Certainly Fulton was not required to risk his life and that of his partner by assuming the contrary. (*Adams v. Williams* (1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923.) The limited weapons search therefore also was reasonable.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*