THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOOKER BLAKES, Defendant-Appellant.

Third District   No. 77-104

Opinion filed December 21, 1977.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Booker T. Blakes was convicted of a Class 3 felony for unlawful use of weapons in violation of section 24—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 24—1(a)(10) and 24—1(b)) after a jury trial in the Peoria County Circuit Court. He received a three- to nine-year prison term. The sole issue on appeal is whether the trial court correctly denied defendant's motion to suppress evidence. Specifically, defendant challenges the court's finding that a loaded revolver was seized as a result of a lawful stop and frisk.

At the hearing on defendant's motion to suppress, Officer Michael Schuerman testified that he confronted the defendant between 9:30 and 10 a.m. on May 20, 1976, in an area of Peoria where several armed robberies of service stations had recently occurred. Schuerman first observed defendant standing on the corner of MacArthur and Adams streets directly in front of a Clark station which had been robbed 10 days earlier. The policeman had personal knowledge concerning this robbery, including a general description of the robber as a black male, approximately 5'8" to 5'10" and 160 pounds, wearing a wool stocking cap, and the fact that the robbery occurred around 10 a.m. He had second-hand knowledge that the other robberies had also occurred in the morning, and had been committed by a man fitting the same general description.

Schuerman testified that defendant matched the robber's description in terms of race, size and clothing. His curiosity was heightened by the fact that defendant appeared to be wearing two pairs of pants in addition to a dark long-sleeved shirt and wool stocking cap, and he observed that

defendant was the only person in the area dressed in this fashion. Schuerman also testified that May 20, 1976, had been a warm and humid day.

After several minutes defendant crossed the street to the southwest corner of MacArthur and Adams, where he remained for several more minutes. During all this time defendant "kept looking around up and down the street" and over toward the Clark station. Finally, the defendant began walking away from the Clark station, but by then Schuerman had decided to stop him for temporary questioning. Schuerman circled the block in his unmarked car and came upon the defendant from the opposite direction. As he got out of the car and approached the defendant on foot, Schuerman noticed that he was definitely wearing two pairs of pants, and also noticed a bulge under defendant's shirt near the waistband of his trousers. Schuerman identified himself as a policeman and simultaneously touched the bulge, which he recognized as a gun butt. Drawing his own gun, Schuerman removed a fully loaded .32-caliber Colt revolver from the defendant, and arrested him. The trial court denied the motion to suppress.

At trial the court granted defendant's motion in limine to exclude specific references to his several prior armed robbery convictions, but the parties stipulated that defendant did have *a* prior conviction within the past five years, since this was an element of the offense of carrying a loaded gun while on parole. The court also granted a defense motion to exclude references to defendant's clothing on the date of his arrest. Schuerman appeared for the State and essentially repeated his earlier testimony. Defendant, who was the only other witness, admitted that he was carrying a gun, but denied knowing that it was loaded. The gun and bullets, however, were admitted in evidence at trial.

At the outset we note that the record does not support the State's contention that Schuerman's action did not constitute a stop, since Schuerman himself testified that he had decided to stop the defendant for temporary questioning. Schuerman's actions, therefore, must be measured against the standards applicable to a stop and frisk as announced by the United States Supreme Court in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

In *Terry*, the court separated the stop from the frisk for purposes of analyzing the reasonableness of the officer's actions. With respect to a stop, the court recognized a legitimate governmental interest in effective crime prevention which must be balanced against the citizen's Fourth Amendment right of privacy. In order to justify his intrusion, the officer must point to specific articulable facts which, taken together with natural inferences from these facts, make the intrusion reasonable. The well-known objective test is whether "the facts available to the officer at the

moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.

With respect to a frisk, the citizen's right of privacy must be balanced against the officer's safety or that of others. However, the same objective test applies, and again, the officer must articulate the reasons which made the patdown search of the suspect necessary and reasonable. Further, "the authorized search is confined in scope to an intrusion reasonably designed to discover objects capable of use as weapons." *People v. Felton* (2d Dist. 1974), 20 Ill. App. 3d 103, 106, 313 N.E.2d 642, 646. Also, Ill. Rev. Stat. 1975, ch. 38, par. 108—1.

A stop and frisk may be warranted by facts which would be insufficient to establish probable cause for an arrest. (*Terry v. Ohio; People v. Ussery* (3d Dist. 1974), 24 Ill. App. 3d 864, 321 N.E.2d 718.) In the instant case, Schuerman's action was based on the fact that the defendant fit the general description of the armed robbery suspect, that he was suspiciously standing around the immediate area where an armed robbery had occurred 10 days earlier, that the defendant appeared to be wearing two pairs of pants and that he was dressed inappropriately for a warm and humid spring day. The trial court, as indicated by its written order denying defendant's motion to suppress, found that these specific factors justified Schuerman's conduct in stopping the defendant.

On appeal the defendant, relying primarily on the case of *People v. Byrd* (1st Dist. 1977), 47 Ill. App. 3d 804, 365 N.E.2d 443, argues that the mere fact he fit the general description of the armed robbery suspect was insufficient to justify the stop, especially since the stop was somewhat remote in time from the date of the last robbery. He also asserts that his conduct on the street was not suspicious, and that even if he was dressed inappropriately, this was not sufficient in itself to justify the intrusion.

Of course, on a motion to suppress the defendant has the burden of establishing a *prima facie* case of unlawful search and seizure (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(b)), and on review the duty of the appellate court is to affirm the trial court unless its decision is manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) The trial court obviously did not believe that defendant established a *prima facie* case of unlawful search and seizure, and, in our opinion, defendant has not shown on appeal that the trial court's decision was manifestly erroneous.

As the court noted in *Williams*, each case involving a stop and frisk must be decided on its own facts, and we find the cases relied upon by defendant to be distinguishable. In *People v. Byrd* (1st Dist. 1977), 47 Ill. App. 3d 804, 365 N.E.2d 443, the court held that a general description was insufficient to warrant a stop, but, unlike our case, the defendant there

was merely walking down the street and was 14 blocks away from the scene of the crime when the intrusion occurred. In *People v. Moorehead* (1st Dist. 1974), 17 Ill. App. 3d 521, 308 N.E.2d 381, the record did not reveal the information that formed the basis of the general description, but here Schuerman specifically described the armed robbery suspect during his testimony at the suppression hearing, Moreover, other cases have indicated that a general description may warrant a stop. *E.g., People v. Garza* (1st Dist. 1976), 44 Ill. App. 3d 30, 357 N.E.2d 1264; *People v. Hines* (1st Dist. 1973), 12 Ill. App. 3d 582, 299 N.E.2d 581.

As for defendant's assertion that his conduct on the street was not suspicious, we would simply point out that his unsupported opinion in this respect is wholly insufficient to establish that the trial court's decision was manifestly erroneous. Similarly, despite defendant's argument to the contrary, his inappropriate clothing for a warm and humid spring day was a relevant factor to be considered in determining the reasonableness of Schuerman's actions. See *People v. McGowan* (3d Dist. 1977), 45 Ill. App. 3d 61, 359 N.E.2d 220, *aff'd* (1977), 69 Ill. 2d 73, 370 N.E.2d 537; *People v. Thomas* (1st Dist. 1973), 9 Ill. App. 3d 1080, 293 N.E.2d 698, *cert. denied* (1973), 414 U.S. 1041, 38 L. Ed. 2d 331, 94 S. Ct. 542.

Defendant's analysis is unpersuasive because it seeks to isolate, rather than combine, the various factors Schuerman relied on in making his decision to stop and frisk the defendant. This analysis ignores the possibility that Schuerman, like the policeman in *Terry*, "observed * * * a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." (392 U.S. 1, 22, 20 L. Ed. 2d 889, 907, 88 S. Ct. 1868, 1880-81.) Analyzed in this manner, we believe that Schuerman's action in stopping the defendant satisfied the *Terry* standards as well as the standards set forth in sections 107—14 and 108—1.01 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, pars. 107—14 and 108—1.01), which represent our State's codification of the *Terry* decision. *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

We also believe that Schuerman's patdown search of the defendant was justified under the objective test applicable to such searches, and that his seizure of the defendant's loaded revolver was proper. The record shows that as Schuerman approached the defendant he was able to observe that defendant was wearing two pairs of pants and that there was a bulge in the waistband of his clothing. Schuerman showed the defendant his police identification and simultaneously touched the bulge, which he recognized as a gun. He then pulled out his own weapon and disarmed the defendant, even though he had not yet asked the defendant any questions. The police officer's observation of a bulge under the suspect's clothing is sufficient to justify a patdown search for weapons. (*In re Interest of Longley* (1st Dist. 1973), 16 Ill. App. 3d 405, 306 N.E.2d 527.)

The reasonableness of Schuerman's action in this connection is manifest.

■■■ We therefore hold that the instant stop and frisk was warranted by the presence of specific and articulable facts which, taken together with the inferences from these facts, made the intrusion reasonable under the circumstances. The defendant having failed to demonstrate that the trial court's decision was manifestly erroneous, we affirm that decision, and further hold that there was no error in allowing the revolver and cartridges in evidence at defendant's trial.

The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.