THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOHN RASMUSSEN, Defendant-Appellee.

Second District   No. 77-217

Opinion filed June 7, 1978.

16

WOODWARD, J., dissenting.

Peter J. Woods, State's Attorney, of Oregon (Phyllis J. Perko, Stephen M. Deitsch, and Barbara A. Preiner, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Spiezer & Thorsen, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with the offense of unlawful possession of not more than 2.5 grams of cannabis (Ill. Rev. Stat. 1975, ch. 56½, par. 704(a)). The defendant filed a motion to suppress items that were taken from his person at the time of this arrest, and the trial court granted the motion. The State appeals.

The evidence presented at the hearing on the suppression motion may be summarized as follows: the defendant testified that he was arrested on August 2, 1976, in front of the "Del Monte Cottages" in Rochelle, Illinois, while walking with Salvador Gonzales and Henry Holt. As the three were proceeding down the street, a squad car pulled up beside them, and a police officer got out of the car, and asked the defendant to empty his pockets. The defendant then produced identification and "emptied" his pockets; the officer nonetheless thereafter "patted him down" and found the contraband. According to the defendant, he was not told that he was under arrest. The defendant denied that Gonzales had given him anything in the presence of Brown.

The State called Grantford Brown, a retired police officer, who was employed as a security guard at the Del Monte Cottages. He testified that he was on duty on August 2, 1976, when he saw Salvador Gonzales go into one of the cottages. As Brown observed through a window, Gonzales opened a locker inside the cottage, removed a plastic bag from a shirt which was hanging in the locker, and placed the bag in his pocket. Brown,

who had received training in identifying cannabis during his 22 years as a police officer, stated that the contents of the bag appeared to be marijuana. Brown called the police as Gonzales left the cottage and walked toward the gate. When Gonzales reached the gate, Brown saw him reach into his pocket, pull out the plastic bag and hand it to the defendant. The defendant, his companion Holt, and Gonzales, then began walking down the street. A squad car with two police officers arrived, and Brown told them that "a switch had been made" and that a plastic bag of marijuana had been given to the defendant.

Officer Jimmy Combs of the Rochelle Police Department testified that on August 2, 1976, he received a call from Brown whom he had known previously. After Combs arrived at the scene, Brown told him that he had seen the "Mexican fellow" pass marijuana to the defendant, whom Brown pointed to. Officer Combs testified that the officers then proceeded down the street, stopped by the defendant, and his companions, and advised the three that they were under arrest. The three were told to empty their pockets onto the hood of the car. Officer Combs then conducted a "pat down" search of the defendant, and discovered the pipe and marijuana.

Under defense cross-examination, Officer Combs admitted that he had not indicated in his police report that Brown told him the marijuana had been "switched" to the defendant. Combs admitted that his report merely stated that when the officers arrived on the scene, Brown pointed to the three subjects and "stated that the Mexican subject had just taken a bag of what appeared to be marijuana from his locker."

A court of review will not disturb a trial court order granting or denying a defendant's motion to suppress evidence unless the trial court's finding is manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506; *People v. Clay* (1973), 55 Ill. 2d 501.) The defendant concedes that if the trial court had chosen to believe Officer Combs, the court could have found that Combs' search of the defendant was lawful. However, it is the defendant's contention that if his testimony is believed "there would have been no cause, much less probable cause for the search"; in the defendant's view, the suppression motion presented a simple question of the believability of witnesses, which was resolved against the State by the trial judge.

■■ ■ The evidentiary conflict, regarding whether or not Combs verbally informed the defendant that he was under arrest, was not important in the context of the testimony presented at the suppression hearing. "If a police officer in his line of duty restrains an individual's liberty, then an arrest has occurred * * *." (*People v. Ussery* (1974), 24 Ill. App. 3d 864, 869 (Stouder, J., specially concurring).) It is not necessary for a police officer to say any particular words, in order to effectuate an

arrest. (See *People v. Mirbelle* (1934), 276 Ill. App. 533, 535 (words " 'Stick them up, we are police officers * * *,' " along with detention of defendant, held to constitute an arrest)); thus, no formal declaration of arrest is necessary for a valid arrest to occur. (*People v. Robbins* (1977), 54 Ill. App. 3d 298.) All that is required for an arrest is (1) the authority to arrest, (2) an assertion of that authority with the intention to effect an arrest, and (3) the restraint of the person to be arrested. (*People v. Moore* (1977), 55 Ill. App. 3d 706, 709-10.) Combs' authority as arresting officer in this case was clear. The assertion of that authority was implicit in the halting of the defendant and his companions, and the order to them to empty their pockets. Since Brown, a retired police officer whom Combs had known before the incident, and who must necessarily have been regarded as a reliable informant, had told the officers that he had seen marijuana passed to the defendant, Combs was under a duty to arrest the defendant and can hardly have had any other intention when he halted him. Similarly, since Combs' order to the defendant to empty his pockets was not phrased in terms of a mere request (compare *People v. Berry* (1977), 54 Ill. App. 3d 647, 649 (officer's request to defendant to " '[c]ome here for a minute' " held not to constitute an arrest)), and it is obvious from the record that, had the defendant fled, Officer Combs, who had gotten out of the squad car, would have pursued him, the conclusion is inescapable that the defendant was under restraint. Therefore, regardless of whether or not Officer Combs actually uttered the words, "[y]ou are under arrest," the trial court could not in these circumstances have reached any conclusion other than that the defendant was under arrest when Combs searched him.

■■ Having reached this conclusion, we have no choice but to reverse the trial court's order granting the defendant's suppression motion. As this court and others have repeatedly held, "[a] peace officer may arrest without a warrant if he has reasonable grounds to believe the person arrested has committed a crime. * * *," and "[t]he belief may be founded upon hearsay evidence." (*People v. Darrah* (1974), 18 Ill. App. 3d 1018, 1021.) In this case, the question of whether or not Brown actually observed marijuana being passed to the defendant was irrelevant. The trial court was not asked to determine whether *Brown* had probable cause to arrest the defendant. Instead, the issue was whether or not Officer Combs had probable cause. It is well established that:

> "Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing defendant has committed an offense * * *." (*People v. Morrison* (1978), 57 Ill. App. 3d 468, 472.)

Here, the testimony of Brown and Combs that Brown told Combs that he

had seen a plastic bag of marijuana passed to the defendant was uncontradicted, and the trial court would not have been justified in ignoring the testimony of these two otherwise fully credible witnesses, merely because Combs failed to record Brown's statement regarding the defendant in his police report. (See *People v. Hampton* (1973), 14 Ill. App. 3d 427.) There can be no doubt but that a man of reasonable caution, upon being advised by such an obviously reliable informant as Brown that marijuana had been passed to the defendant, would believe that the defendant had committed an offense. Brown clearly provided Officer Combs with reasonable grounds to believe that the defendant had received cannabis from Gonzales, regardless of whether or not Brown had actually witnessed such a transaction, and the warrantless arrest was therefore valid. That being so, it follows that the search of the defendant's person was lawful, since:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477.

Therefore, the trial court's order of February 18, 1977, granting the defendant's suppression motion is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

NASH, J., concurs.

Mr. JUSTICE WOODWARD, dissenting:

The issue in this case is whether there is sufficient evidence in the record to support the decision of the trial court to suppress the evidence taken from the person of the defendant at the time of the search. As stated in the opinion of the majority, it is the duty of the appellate court to affirm the decision of the trial court unless the decision of the trial court is manifestly erroneous. In making this determination, a review must be made of the evidence elicited at the suppression hearing. There is no dispute as to what each witness testified to at the hearing as the defendant agrees that the statement of facts contained in the State's brief is essentially correct; hence the result reached in this case involves the credibility of the witnesses and the reasonable inferences, if any, that may be drawn from their testimony.

The defendant testified that while he and two friends were walking along the street, a police car pulled up and an officer got out and asked the defendant to empty his pockets; then the officer conducted a pat-down

search of the defendant which resulted in a discovery of the pipe and marijuana; defendant stated that these items were not in plain view at that time. Defendant expressly denied receiving anything from his friend, Gonzales, while in the presence of Brown, a security guard.

Brown testified that he was a security guard at the Del Monte cottages on August 2, 1976, at about 10 p.m. That while performing his duties as such a guard, which included making sure there was no trouble in the cottages and that there was no whiskey or marijuana in the cottages, he saw Gonzales come through the gate. He followed Gonzales to the cottage where the latter lived; Gonzales entered and Brown stood on the sidewalk outside the cottages looking through a window. At that time he saw Gonzales open his locker, reach inside the pocket of his shirt hanging in the locker and remove a plastic bag which he placed in his right pocket. He further stated that he had been employed as a police officer for 22 years and had training and experience and was able to identify the substance contained in the plastic bag as marijuana. He stated that he observed Gonzales take the plastic bag from a distance of 15 or 20 feet and that all the lights in the cottage were on at the time, the nearest light being immediately behind where Gonzales was standing. He stated that Gonzales then came out of the cottage and walked toward the gate. Brown then called the police; thereafter he observed Gonzales walk to the gate, take the bag from his pocket and hand it to the defendant. As the defendant and his two friends turned to leave, the police arrived. Brown testified that he then told police officer Combs that Gonzales had made a switch and transferred the marijuana to the defendant. He stated he had no further conversation with Officer Combs. On cross-examination Brown reiterated that Gonzales took the marijuana out of his right front pocket. He stated that he did not see how the defendant took the marijuana from Gonzales or in which pocket he put it in because Gonzales was blocking his view. Brown stated that he knew the defendant and his two friends as a result of his prior employment as a police officer. He estimated the amount of marijuana in the plastic bag as being a small amount.

Officer Combs testified that when he arrived at the scene, Brown told him that he had seen the Mexican fellow pass marijuana to the defendant and that based on what Brown told him he stopped the three men and told them they were under arrest and asked them to empty their pockets. The search resulted in finding a stainless steel pipe and a plastic bag of marijuana on the defendant's person. He stated that Brown had not described what had been passed to the defendant except that it was marijuana. On cross-examination Officer Combs admitted that he did not include in his police report that Brown told him the marijuana had been passed to the defendant. He further stated that the report contained only

the notation that the Mexican subject had taken marijuana from his locker.

After hearing this evidence, the State and the defense argued their respective positions and the court granted the motion to suppress the evidence, finding that the State failed to sustain its burden of proof.

The record in this case shows a factual conflict in regard to the following:

> 1. Whether the defendant received any marijuana from Gonzales in the presence of Brown, the security guard. Testimony of the defendant and the testimony of Brown are in direct conflict on this point.
>
> 2. Whether Officer Combs was told that the defendant had possession of marijuana prior to the time he searched the defendant. Both the police officer and Brown answered this question in the affirmative.

On the other hand, defendant contends that it would have been logical for Officer Combs to have stated in the police report that he had been advised of "the switch" as it was the defendant who was arrested and not Gonzales. It should be further noted that Officer Combs did include in his police report a statement that Brown advised him, when he arrived at the scene, that Gonzales had the marijuana. By the foregoing statement it is not intended that an omission in a police report be considered as a conflict in the evidence; however, in this case it is not unreasonable to consider the omission in the police report together with the statement included in the police report plus all of the other circumstances testified to by the witnesses. For instance, Brown stated that he was able to identify a small amount of marijuana in the plastic bag at a distance of 15 or 20 feet away. This is a rather remarkable determination even with the light on considering that the color of marijuana is not dissimilar to various forms of tobacco.

The majority opinion states that "The question of whether or not Brown actually observed marijuana being presented to the defendant was irrelevant." I disagree; this fact is crucial; if not true, there was never any basis to search the defendant as the "obviously reliable informant," Brown, was found to be unreliable by the trial judge as he weighed the truthfulness of the defendant on this point as opposed to the testimony of Brown and Officer Combs.

The majority opinion states that it was uncontradicted that Brown told Officer Combs that he had seen a plastic bag of marijuana passed to the defendant, however, if the trial court believed the defendant's testimony, then Brown never saw "the switch" in the first place and his statement that he did was false. If that statement is false, it could not provide a basis for a search of the defendant.

The case relied on by the majority in their discussion of the credibility of the witnesses, *People v. Hampton* (1973), 14 Ill. App. 3d 427, is misapplied. In that case the testimony of a police witness was discredited at trial, but the trial court, in considering all of the evidence with all the contradictions, still gave credence to much of the witness' testimony, ultimately finding defendant guilty of possession of narcotics. The First District affirmed the trial court and held that the determination of the credibility of a witness was properly a matter for the trial court and that obviously the court chose to still believe the witness in spite of the contradictions.

In the cause before us, the trial court was faced with a similar problem in determining the credibility of the witnesses. In making its determination, however, the court, unlike the *Hampton* trial court, chose to disbelieve the State's witnesses and believe the defendant's.

Because the trial court was in a better position to determine credibility of the witnesses; because the record shows a proper basis for the court's decision, I do not believe that the order entered by the trial court was manifestly erroneous. It is therefore the duty of this court to affirm the decision of the trial court, and I would so do.