THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOUIS SMITHERS, Defendant-Appellee.
Third District    No. 78-311

Opinion filed August 31, 1979.

STENGEL, J., dissenting.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The basis for this appeal is the trial court's granting of the motion of the defendant, Louis Smithers, to suppress as evidence a revolver seized from the person of the defendant. At the hearing on the motion to suppress the defendant testified that at approximately 3:30 a.m. on February 10, 1978, after finishing work as a security guard, he drove to the area of the Spanish Lady Tavern to meet with a friend. He testified that he never actually entered the tavern, but as he was about two feet from the back door, he observed his friend and three other persons arguing inside the tavern. After seeing the commotion, he turned and walked back down the gangway which was about 40 feet long. At that time, he was stopped

and searched for weapons. The defendant further testified that, at the time of the search, he was wearing a goose down coat, buttoned and zippered, and that he did not consent to the search for a weapon. In addition to his personal identification papers, the defendant was carrying a firearm owners identification card.

Officer Meisener and Officer Nelson of the Peoria Police Department testified that, at approximately 3:55 a.m. on February 10, 1978, they responded to a "man with a gun" call at the Spanish Lady Tavern. Officer Meisener arrived at the tavern first and heard yelling. When he entered the tavern through the front door, he observed the defendant walking towards the front door. He then observed the defendant turn and walk to the rear of the tavern. At that point, Officer Meisener asked the bartender if the defendant had been involved in the fracas. The bartender replied that the defendant had. Officer Meisener then told Officer Nelson to stop the defendant. However, according to the findings of fact of the trial court, Officer Meisener also testified that no crime was committed by anyone in his presence and that no one said anything about the defendant having a gun.

Officer Nelson testified that he stopped the defendant in a passageway approximately ten feet from the back door of the tavern. Officer Nelson conducted a patdown search for weapons and discovered a revolver.

The bartender testified that, of the approximately 20 parties in the tavern at the time of the incident, two or three men, including a man named Adams, were involved in an argument in the tavern approximately five minutes before the police arrived. After he told them to quiet down, he overheard Adams on the telephone saying words to the effect "not going to shoot me." The bartender also observed the defendant in the tavern, but testified that the defendant was not causing a disturbance, even though he was speaking with Adams.

■■ The law relating to the legality of a stop and frisk is clear. When a peace officer reasonably infers from the circumstances that some person is committing, about to commit or has committed an offense, the peace officer may stop such person, if in a public place, for the purpose of temporary questioning. (Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) If, at the time of such a stop, the peace officer reasonably suspects that he, or another, is in danger of attack, the peace officer may search the person stopped for weapons, thereafter arresting the person if unlawfully possessed weapons are discovered. (Ill. Rev. Stat. 1977, ch. 38, par. 108—1.01.) However, a peace officer's inferences cannot be considered reasonable unless it can be shown that those inferences were based "on more substantial facts and circumstances than would support a mere

hunch, yet less substantial than those necessary to support a finding of probable cause to arrest or search the defendant." *People v. McGowan* (1977), 69 Ill. 2d 73, 77-78, 370 N.E.2d 537, 539.

The circumstances in this case are that the police received a report of a man with a gun in the tavern and, upon their arrival at the tavern, the defendant was leaving the establishment. It does not logically follow that a man leaving a tavern is carrying a weapon. Nor does the defendant's change of direction lead to that conclusion, for there is no evidence the defendant observed the police officer or changed direction to avoid a confrontation with the police officer. The bartender's response to Officer Meisener's question indicating that the defendant had been involved in the "fracas" is even less convincing since the "fracas," according to the testimony, was nothing more than an argument or yelling, which the bartender later testified did not involve the defendant. Officer Meisener even admitted that no one said anything to him about the defendant having a gun.

As a result, the trial court found that, under the circumstances, the peace officer had no reasonable basis to believe the defendant had committed or was about to commit an offense. In reviewing a trial court's ruling on a motion to suppress illegally seized evidence, the appellate court has a duty to affirm the trial court's decision unless that decision is manifestly erroneous. (*People v. Rasmussen* (1978), 61 Ill. App. 3d 15, 377 N.E.2d 359; *People v. Blakes* (1977), 55 Ill. App. 3d 654, 370 N.E.2d 869.) Furthermore, it must always be remembered that a trial court has an advantage over a court of review in that the evidence and testimony upon which the trial court based its determination was presented in that court. See *People v. Van Note* (1978), 63 Ill. App. 3d 53, 379 N.E.2d 834.

■■ Based on the same law and facts, the dissent would have us reach a different conclusion. This conclusion, however, is based on two unwarranted assumptions. First, even though the flight of a defendant is a circumstance to be considered in determining the reasonableness of the police action, a mere change in direction, if the police officer's testimony is to be believed, can hardly be defined as a flight. The facts do not establish that this defendant made any attempt to run or to resist the police.

The least convincing premise on which the dissent is based is that a call reporting a man with a gun necessarily leads to the conclusion that an offense had been or was presently being committed. The officers were not called to break up a disturbance, and the call could certainly have been a hoax. The weapon might even have been lawfully possessed. While no one suggests that the police use less caution because of these possibilities, when the officer entered the bar what he observed was an argument.

The reality of the situation confronting the police officers must temper the inferences a reasonable man might have made from the

complaint of a man with a gun. Loud arguments occur in bars every day without any relation to an offense having been committed, being presently committed or about to be committed therein. In addition, the record does not establish that the police were informed that the "man with a gun" was involved in an argument.

■■ These circumstances would not justify the police searching every person in the tavern, and the only difference between the defendant and the others was that, in walking, he changed direction. This fact, coupled with the statement of the bartender that the defendant was involved in the argument, raised a suspicion, a mere hunch, in the mind of the officer, to the effect that the defendant might well be "a man with a gun." The trial court determined that this suspicion was unreasonable. From the facts presented in the instant case, we cannot conclude that the trial court's determination was manifestly erroneous. Accordingly, the order of the Circuit Court of Peoria County is affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STENGEL, dissenting:
I dissent.

To justify a "stop and frisk" of a person, police officers must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.) The facts justifying a "stop and frisk" need not be sufficient to establish probable cause to arrest. (*People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537.) The justification for the limited intrusion into a citizen's privacy is the need to protect the police officers and other persons nearby from possible danger, and the essential question which must be answered in each case is:

> "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *People v. Lee* (1971), 48 Ill. 2d 272, 276, 269 N.E.2d 488, 491; *Terry.*

Although each "stop and frisk" case must be decided on its own facts, courts have consistently looked to certain factors to determine the appropriateness of an officer's actions, including the nature of the call to which the officers are responding (*Lee; People v. Basiak* (1977), 50 Ill. App. 3d 155, 365 N.E.2d 570), the time of day (*McGowan; People v. Berry* (1977), 54 Ill. App. 3d 647, 370 N.E.2d 26), the location of the incident (*McGowan; People v. Blakes* (1977), 55 Ill. App. 3d 654, 370

N.E.2d 869) and the flight of the person when confronted by the officers. *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025, *People v. Montgomery* (1977), 53 Ill. App. 3d 298, 368 N.E.2d 752.

In the instant case Officers Meisener and Nelson responded during the early morning hours of the night, 3:30 a.m., to a "man with a gun" call from the Spanish Lady Tavern which contained 20 or more noisy and boisterous patrons. When Officer Meisener entered the front door of the tavern, defendant, who had been walking toward that door, turned and walked toward the rear door of the tavern. After being advised by the bartender that defendant had been involved in the fracas, the officers stopped defendant and conducted the limited "pat down" search which resulted in discovery of the weapon.

Considering these facts, I cannot agree with the majority's conclusion that the officers' action in detaining and frisking defendant was unreasonable. The officers had been advised that defendant was involved in the earlier reported fracas and they would have been remiss in their duty had they allowed defendant to leave the tavern without further investigating his involvement. Moreover, because the incident in which defendant was said to have participated involved a "man with a gun," the officers clearly would have been foolhardy to detain defendant without first assuring themselves that he was not armed and dangerous. *People v. Basiak* (1977), 50 Ill. App. 3d 155, 365 N.E.2d 570.

> "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio* (1968), 392 U.S. 1, 23, 20 L. Ed. 2d 889, 907, 88 S. Ct. 1868, 1881.

The majority erroneously places too much significance on the fact that no crime took place in the officers' presence. The officers weren't called to the tavern for the purpose of stopping a game of cards but were called to stop a fracas and to seek a "man with a gun."

Certainly in this case the search of the defendant was predicated upon the officers' reasonable fear for their safety. The officers were pursuing a proper investigative function by stopping defendant. The totality of the circumstances, particularly the defendant's attempt to evade the officers, supplied them with reasonable grounds to conduct the pat-down search to assure their safety. The officers need not personally observe the commission of a crime to warrant a "stop and frisk."

The yardstick under the two statutes mentioned in the majority opinion is reasonableness.

"Where probable cause for an arrest is lacking, the forcible encounter, the stop, or the seizure, of a citizen by a police officer must arise from a reasonable suspicion that criminal activity is afoot. ( * * * *Adams v. Williams*, 407 U.S. 143, 145; *cf. Terry v. Ohio*, 392 U.S. 1, 22; *Sibron v. New York*, 392 U.S. 40, 72-73 * * * ; [citations].) There is, however, no ready test for determining reasonableness. Rather, a balance must be struck between the need to seize (or stop) and the invasion which the seizure (or stop) entails." (*People v. Moore* (1973), 32 N.Y.2d 67, 69, 343 N.Y. Supp. 2d 107, 110, 295 N.E.2d 780, 782; *cf. Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868; see *People v. Rivera* (1964), 14 N.Y. 2d 441, 444-45, 252 N.Y. S. 2d 458, 460-62, 201 N.E.2d 32, 33-35.)

The fact is that only a few minutes prior to the "stop and frisk" of the defendant, the officers had received a report from the tavern of an incident involving a "man with a gun." The need for immediate action in locating the gun and protecting themselves and other persons from potential danger was apparent to the officers. Yet the majority opinion seeks to place an unnecessary risk on the police officers in the proper performance of their duties.

The majority notes the bartender's suppression hearing testimony that the reported fracas was actually only a yelling argument and that defendant had not been involved in it. This testimony is of no significance to the decision in this case. Whether or not the action of the officers was appropriate is to be determined on the basis of "*the facts available to the officer at the moment of the seizure or the search.*" (*People v. Lee* (1971), 48 Ill. 2d 272, 276, 269 N.E.2d 488, 491.) The facts to which the bartender testified at the suppression hearing were not communicated to the officers at the time of the "stop and frisk" and are, therefore, irrelevant to a determination of the reasonableness of the officers' actions. At the time of the search, the officers had been advised that a "man with a gun" incident had taken place at the tavern and that defendant had been involved in it. Moreover, the defendant's sudden change of direction upon seeing the officers enter the tavern could have justifiably been interpreted by the officers as an attempt by the defendant to avoid the officers and to flee from the scene. The high incidence of aggravated assault and the attendant use of firearms in tavern fights or quarrels needs no elaboration here. Concealed weapons present an immediate and real danger to the public. I cannot agree with the conclusion the majority has reached because I believe it to be clearly unreasonable to deny the police officers

the power to take necessary measures to determine whether the defendant was in fact carrying a weapon and to neutralize the threat of physical harm.

I believe the officers in this case had not only the right, but the duty to stop defendant and subject him to a protective frisk. The judgment of the Circuit Court of Peoria County should be reversed.