THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* STEVE POLK, Defendant-Appellee.

Third District    No. 80-561

Opinion filed April 30, 1981.

John A. Barra, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

James R. Carter, of Peoria, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Steve Polk, was charged by complaint with the unlawful use of weapons. (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(10).) He moved to suppress the .22-caliber gun removed from his pocket as the result of a stop and frisk procedure. The trial judge allowed the defendant's motion, and the State brought the instant appeal.

The defendant testified at his suppression hearing that on May 30, 1980, at approximately 11:15 p.m., he arrived at the Slipper Club in Peoria, Illinois, to revive his father-in-law, who was located outside and behind the club in an intoxicated condition. As he was attempting to awaken his father-in-law, the defendant noticed a couple in the area. He recognized the woman and spoke to her, whereupon her escort, whom the defendant did not know, stated, "That's my old lady." The defendant terminated the conversation, went to his car to obtain his cigarettes and returned to his father-in-law.

A short time later, the manager of the club came outside accompanied by two Peoria police officers. According to the defendant's testimony, one of the officers approached the defendant, asking him if he had gone to his car for anything. When the defendant replied that he had retrieved his cigarettes, one of the officers grabbed his arms while the second officer patted him down. A .22-caliber gun was found on the defendant's person.

On cross-examination, the defendant denied having made any threats to the man who had been in the company of the woman the defendant knew. He also denied having his hands in his pockets.

The State's only witness at the suppression hearing was Peoria police officer Mike Falatko. He testified that he was dispatched to the Slipper Club on a "trouble call," which he explained on cross-examination could mean any type of public disturbance.

Upon his arrival at the club, Officer Falatko met John Tinsley, previously unknown to him, and Joe Mosley, an employee of the club. Officer Leemon Rowe joined Officer Falatko at this time. Tinsley reported that a man in the rear parking lot area had threatened him. Tinsley also stated to the officers that the man, whom Tinsley did not specifically identify, had removed something from the glove compartment of his car. Tinsley did not see what was taken from the glove compartment, although he told the officers that he thought it might be a gun. On cross-examination, Officer Falatko testified that the area behind the Slipper Club is known as one where people tend to congregate.

The two police officers, accompanied by Joe Mosley, went to the rear parking lot, where Mosley pointed out the defendant as the man involved in Tinsley's complaint. Officer Falatko testified that as he

approached the defendant, the defendant appeared to quickly place his hands in his front pants pockets. Officer Falatko quickly placed his hands on the defendant and pulled the defendant's hands from his pockets. A pat-down search was immediately conducted, and the .22-caliber gun was found. Officer Falatko testified that he feared for his own safety and believed the defendant did have a gun in his front pants pocket at the time he conducted the pat-down search.

In granting the defendant's suppression motion, the trial judge stated that the police officer could have been in reasonable fear for his safety when he placed his hands on the defendant's hands and removed them from the defendant's pockets. However, the judge further stated that the danger had passed when the defendant's hands were removed from his pockets, and in light of the fact that Tinsley, who was unknown to the police officers, had failed to specifically identify the defendant as the man who threatened him and had not seen a gun removed from the defendant's automobile but merely suspected that the defendant had obtained a gun, the warrantless search of the defendant's person was unreasonable.

The frisking of the defendant was conducted pursuant to the following statutory codification of the stop and frisk and doctrine enunciated in *Terry v. Ohio* (1968), 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U. S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889:

> " §107—14.   Temporary Questioning without Arrest. A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

> " §108—1.01.   Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." Ill. Rev. Stat. 1979, ch. 38, pars. 107—14, 108—1.01.

The question on review thus becomes whether the trial judge's determination that the search of the defendant was unreasonable is against the manifest weight of the evidence. We find that there was

sufficient cause to authorize the stop and frisk, and that the circuit court's suppression order was contrary to the manifest weight of the evidence.

■■ The right granted to a police officer to stop a citizen does not automatically extend to the further intrusion of a search for weapons. But where the officer has a reasonable belief that his safety or the safety of others is in danger, he is justified in conducting a search. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889.) The reasonableness of the officer's actions depends upon the facts and circumstances of the case. (*People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.) To be reasonable, the inferences drawn by the police officer must be based on more substantial facts than would support a mere hunch. *People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.

■■ In the case at bar, we find that the circumstances surrounding the pat-down search of the defendant were certainly justified. Officer Falatko would have been derelict in his duty and would have unnecessarily endangered his life and that of others had he not frisked the defendant after removing the defendant's hand from his pants pockets. Although the complainant, Tinsley, did not specifically identify the defendant, the employee Mosley was able to point out the defendant to the police as the person who allegedly threatened Tinsley. In addition, the fact that Tinsley did not see whether the defendant retrieved a gun from his car or some other object, does not render the officer's subsequent actions unreasonable. Testimony was conflicting on the question of whether the defendant put his hands into his pockets when confronted by the officers, but this fact alone does not make the officer's account of events untrue. We believe the manifest weight of the evidence supports the stop and frisk search conducted by the officers.

Certainly the fact that the defendant's hands were removed from his pockets does not eliminate the danger to the officer's life and the life of others, as the trial judge contended in granting the defendant's motion to suppress.

In *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624, officers observed the defendant and another man emerging from an industrial area about 1 a.m. Both men were wearing black clothing, which inferred an imminent or recent burglary to the officers. These circumstances were sufficient to justify a frisk of the defendant, and the gun found on his person was admissible in his prosecution for unlawful use of weapons. In *People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327, police officers responded at 4 a.m. to a telephone call that a "man with a gun" was in a local tavern. The officers heard yelling as they approached the tavern

and, as they entered, they observed the defendant turn and walk away from them. Someone in the tavern indicated to them that the defendant was the troublemaker. The subsequent stop and frisk of the defendant was held to be reasonable by the Illinois Supreme Court, and the weapon found on the defendant's person was admitted into evidence.

We find the facts and circumstances in the case at bar as compelling as those in *McGowan* and *Smithers* and accordingly reverse the order of the Circuit Court of Peoria County suppressing the evidence and remand the cause for further proceedings.

Reversed and remanded.

ALLOY and BARRY, JJ., concur.