THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DESTAN CELIKU, Defendant-Appellee.

First District (2nd Division)   No. 1—92—3363

Opinion filed March 29, 1994.

McCORMICK, J., dissenting.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William Toffenetti, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Anne C. Myles-Smith and Vicki Rogers, Assistant Public Defenders, of counsel), for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
Defendant Destan Celiku was charged with delivery of a controlled substance and with possession of a controlled substance with intent to deliver. Following an evidentiary hearing, defendant's motion to suppress evidence was granted by the circuit court. The State appeals from that order.

At the hearing, Chicago police officer Don Eichler, called by defendant, testified that he arrested defendant on March 21, 1990, at about 10:45 a.m. He had neither a search warrant nor an arrest warrant for defendant, who was standing outside of a building at 534 Wellington. When the officer approached defendant, he spoke to him in English, and defendant answered in a foreign language.

On cross-examination Eichler testified that he and Officer Gates, who were in plain clothes, were patrolling the area because several burglaries previously had been reported. As a matter of fact, other officers were on surveillance in the area. Defendant "was walking along the property line up and down the alley" behind 534 Wellington. Eichler noticed that the rear door to the building at that address was open six to eight inches and had pry marks on it "around the lock and knob." Eichler and Gates left their car to talk to defendant.

As the officers began conversing with defendant, a second man came out of the underground parking garage of the same building and started walking toward them carrying a purple gym bag. Defendant yelled something to the man in a foreign language which Eichler could not understand. The other man then "turned and began to go back into the garage," but when Eichler asked him to stop, he threw the gym bag under one of the cars in the garage and began to run out the front entrance of the garage. He was arrested, and Eichler looked inside of the bag and saw two large plastic bags of a white

rock substance believed to be cocaine; a triple beam scale, commonly used to weigh cocaine; and "pyramid papers," used for packaging cocaine.

After the other man was arrested and the contents of the gym bag were observed, Eichler went back to defendant, who was searched and on whom more cocaine was found.

On redirect examination Eichler testified that defendant was not in possession of any burglary tools when he saw him in the alley, and defendant was never in possession of the purple gym bag. The court found that there was no probable cause on which to base the search of defendant.

Probable cause to arrest exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*Dunaway v. New York* (1979), 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9.) Whether probable cause is present is governed by commonsense considerations (*Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310), and the calculations concern the probability of criminal activity rather than proof beyond a reasonable doubt. *People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.

Here, the prior knowledge and observations of the police officers provided a reasonable inference of criminal involvement based upon specific and articulable facts to support an investigatory stop (*People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537) and even a *Terry* search of defendant (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868). If such a search had resulted in the detection of the cocaine through touch, the seizure of the cocaine and the arrest of defendant would have been justified (*Minnesota v. Dickerson* (1993), 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130). But the events that occurred immediately after police confronted defendant justified much more than a *Terry* intrusion. During this time, the other man had emerged from the underground parking garage of the building carrying a gym bag; he had turned and started to walk away when defendant yelled at him in a foreign language; and, when the officer told him to stop, he threw the bag under a car and ran. This conduct alone, combined with the previous knowledge and observations of the officers, would have justified a belief in any reasonably prudent person, under *Dunaway*, that defendant was involved in the commission of the offense of burglary. In applying commonsense considerations (*Brinegar*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302), the officers could conclude that criminal activity was probable (*Tisler*, 103 Ill. 2d 226, 469 N.E.2d 147).

Nevertheless, the uncontradicted evidence was that even then the officers did nothing more with defendant until the gym bag was retrieved and it was found to contain suspected cocaine and paraphernalia related to cocaine. At that point, regardless of any possible innocent explanation, the officers were justified in concluding that defendant had voiced a warning of police presence to the other man and that the two men were acting in concert, perhaps in relation to a burglary, certainly in regard to some drug offense. The criteria for probable cause were abundantly present; arrest and search at that point were plainly justified. Indeed, any alternative action by police under such circumstances might raise the specter of malfeasance.

We conclude that the suppression order in this case was against the manifest weight of the evidence, and we therefore reverse the order of the circuit court and remand this cause for further proceedings.

Reversed and remanded.

HARTMAN, J., concurs.

JUSTICE McCORMICK, dissenting:

Once upon a time at a place not far away, a peace officer detained defendant, a suspicious person, for the purpose of inquiry. The peace officer spoke to defendant in our native tongue. Defendant spoke in a foreign tongue which was not discernible by the peace officer. A man exiting a nearby building walked in the direction of defendant and the peace officer. Defendant uttered incomprehensible sounds, the man reversed his direction and the peace officer asked the man to stop. At this, the man vaulted into a gallop and increased the distance between the peace officer and himself. The man discarded a hand-carried gym bag by propelling it under a car. The retrieved gym bag contained a controlled substance and drug paraphernalia. The peace officer arrested defendant and conducted a search of his person.

The anointed trier of fact found that probable cause to arrest defendant did not exist. Specifically, the anointed trier of fact, armed with its firsthand observation and evaluation of the evidence, found defendant's conduct to be suspicious and warranted an investigation by the peace officer. However, the anointed trier of fact could not make the leap from suspicion to a factual inference that a crime had been committed and that defendant was involved. No inference can be made that defendant was working in concert with the other man said the anointed trier of fact. I cannot guess what was said by defendant and you cannot presume that a warning was made and they were working together.

Undaunted by the anointed trier of fact's limitations, armed with the scribe's script, the majority opinion states:

"[T]he prior knowledge and observations of the police officers provided a reasonable inference of criminal involvement [of defendant] ***. ***

*** [T]he officers were justified in concluding that defendant had voiced a warning of police presence to the other man and that the two men were acting in concert, perhaps in relation to a burglary, certainly in regard to some drug offense." 259 Ill. App. 3d at 811.

Inferences are facts surmised from the existence of basic facts. They are permitted where logic or human experience indicates a high probability that if a basic fact or facts exist, there coexist a corresponding inferred fact or facts. The findings of facts, from the evidence, are within the domain of the trier of fact.

The majority carves out inferences without having basic facts to support them. Guess, speculation or conjecture cannot support an inference.

Within the context of the facts of the instant case, the incomprehensible sounds uttered by defendant did not permit an inference that defendant was working in concert with the other man.

There is no logic or human experience that indicates a high probability that when unknown words are spoken and a man carrying drugs runs away, the two are working in concert to sell drugs or commit a burglary. We should not disturb the trial court's ruling on a motion to quash an arrest unless the trial court's finding is manifestly erroneous. (*People v. Doyle* (1992), 233 Ill. App. 3d 706, 599 N.E.2d 1045.) A finding is manifestly erroneous when the error is "clearly evident, plain and indisputable." (*People v. Green* (1991), 218 Ill. App. 3d 71, 75, 578 N.E.2d 169.) The finder of fact's findings are not manifestly erroneous.

Therefore, I believe that the order of the circuit court, based on its finding as the trier of fact, should be affirmed.