THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RICHARD W. BASIAK, Defendant-Appellee.

First District (4th Division)    Nos. 76-401, 76-402 cons.

Opinion filed June 16, 1977.

156

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Wendy Paul Billington, Assistant State's Attorneys, of counsel), for the People.

Glenee E. Gutsche, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Richard Basiak, was charged by two separate complaints with unlawful use of a weapon (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(4)), and possession of a firearm without having in his possession a State firearm owner's identification card. (Ill. Rev. Stat. 1975, ch. 38, par. 83—2.) The trial court sustained defendant's pretrial motion to suppress the evidence as to both charges. This is an appeal by the State from that order.

The State contends that the evidence was properly obtained through a valid search incident to either a lawful "stop and frisk" or, alternatively, a lawful arrest.

We reverse the judgment of the trial court.

The only testimony at the hearing on the motion to suppress was that of Chicago Police Officer Allen Kieras. He testified as follows: At approximately 2 a.m. on April 28, 1975, Officer Kieras and his partner, while on patrol in their marked squad car, approached the intersection of Elm and Dearborn Streets in Chicago. At that time Kieras heard a noise which, in his opinion, based on his 4½ years as a Chicago policeman, sounded like a single gun shot. The shot appeared to Kieras to have originated from around the corner, on Elm Street. Kieras and his partner drove around the corner and saw the defendant and another man

standing by an alley, approximately 100 feet west of Dearborn. This was the location from which Kieras believed the noise had originated. There were no other people and no cars in the area. Except for one restaurant, which was closed, and its garage, the area consisted of vacant lots. The two officers, in uniform, approached the two men with guns drawn and told them to keep their hands out of their pockets and to get against the car. They then made a search of both defendants. Kieras described it as " * * * a search for possible weapons for our own protection." The search of the defendant produced the gun which was the subject of the motion to suppress.

■■ We first consider the State's contention that the search was pursuant to a valid stop and frisk. The constitutional standards for such an action were established in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The initial stop may be for the purpose of " * * * investigating possibly criminal behavior even though there is no probable cause to make an arrest." (*Terry v. Ohio* (1968), 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906-07, 88 S. Ct. 1868.) But to justify this intrusion " * * * the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.) Once the investigatory stop is made, if the officer reasonably believes that the person with whom he is dealing may be armed and dangerous, he may make " * * * a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry v. Ohio* (1968), 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868.

An example of what facts have been held sufficient to justify a stop and frisk is found in *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488. There two police officers were informed by a superior officer that it had been reported that there was to be a "gang war" that night in the area to which the officers were assigned. While on duty in their squad car the officers heard what sounded to them like gun shots. About two blocks away, within two minutes, they observed six young men walking on the sidewalk. There was no one else in the area. Four of the men wore headgear worn by a gang which one of the officers testified he thought might be involved in the expected gang trouble. The officers stopped the men, talked with them briefly, then subjected them to a pat search for weapons. As a result of ammunition found in the possession of four of them, those four were convicted of unlawful possession of firearms ammunition. Three defendants appealed, and in affirming their convictions the court found that the officers had acted reasonably, based on the standards set out in *Terry*, in stopping the men and in making the protective pat searches.

■■ We find *Lee* to be persuasively in point, and that the similar

circumstances of the case at bar would permit a properly limited stop and frisk. Officer Kieras testified that he had heard gunshots before, and that based on 4½ years as a policeman, he believed that he heard a shot at the time in question. The only people in the area were the defendant and his companion. They were located at the very spot from which Kieras believed shots had emanated. These are specific facts from which Kieras quite reasonably decided that an investigation was warranted. Once the stop was made there was reason for both officers to fear that the men they had stopped might be armed and dangerous since the officers were investigating what they believed to be a gunshot. Kieras testified that they then made a search for weapons.

Defendant concedes that a limited stop and frisk may have been justified under the facts of this case. However, it is his contention that the actions of the police constituted an immediate arrest and general search unsupported by the requisite probable cause.

■■■ As factual support for this contention defendant points out that on first approaching the defendant and his companion the police already had their weapons drawn and immediately searched the two men without first questioning them. It is true that in *Terry* the police officer first identified himself and asked the names of the suspects before searching them. But the court did not isolate those procedures as crucial to a constitutional stop and frisk. Instead it emphasized that further guidelines would evolve from the special facts of future cases. (*Terry v. Ohio* (1968), 392 U.S. 1, 29, 20 L. Ed. 2d 889, 910, 88 S. Ct. 1868.) As Justice Harlan stated in his concurring opinion in *Sibron v. New York* (1968), 392 U.S. 40, 74, 20 L. Ed. 2d 917, 941, 88 S. Ct. 1889, " * * * the right to frisk is automatic when an officer lawfully stops a person suspected of a crime whose nature creates a substantial likelihood that he is armed * * *." The response to the officer's request for names in *Terry* was that the defendant "mumbled something,"—hardly an incriminating statement in itself. But the court in *Terry* did note that the situation which led the officer to believe that an armed robbery might be planned was sufficient to reasonably cause him to fear that these men might be armed. The facts in the case at bar, where the officers reasonably suspected that one of these two men might have just fired a shot, provide even stronger support for the officers' actions in immediately drawing their guns and searching the two men for weapons. Defendant has cited the Illinois statutory codification of the "stop" portion of *Terry*, which provides in relevant part that: "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an

explanation of his actions * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 107—14.) Defendant apparently believes that this statute supports his claim that the police should first have questioned the defendant before searching him. However, our Supreme Court has held that this statutory provision was intended to codify the holdings of *Terry* and *Sibron* and was not intended to be more restrictive than the guidelines set out in those cases. (*People v. Lee* (1971), 48 Ill. 2d 272, 278-79, 269 N.E.2d 488.) The court in *Terry* made note of the officer's identification of himself because he was a plainclothes policeman. Certainly such an identification is not required in a case such as the one before us where the officer is in uniform. As to the provisions for questioning the persons stopped, defendant failed to cite the "frisk" portion of the Illinois statutory codification:

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, *he may take it until the completion of the questioning,* at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 38, par. 108—1.01.)

The statute clearly provides for a situation in which the search will precede questioning. This statute fully comports with the purpose of the procedures set forth in *Terry*—the protection of police officers from attack by the persons they are questioning. It would be unreasonable to require police officers who are approaching men they believe were involved in the firing of a gun minutes earlier to keep their weapons holstered and engage in investigative questioning prior to making a search for weapons which could be used against them. Indeed, it might well prove retrospectively foolhardy.

Defendant cites the case of *People v. Talley* (1975), 34 Ill. App. 3d 506, 340 N.E.2d 167 in which the court, in dicta, expressed some doubt that a stop and frisk could be found where the police officer never testified he intended to merely question the defendant or that he actually asked the defendant any questions. However, *Talley* was decided on a finding of lack of probable cause, in that the officer testified that he approached the defendant simply because he matched the description of a man wanted for a crime committed three days earlier in the area, without testifying as to the nature or source of the description on which he relied. The court never squarely decided the question of whether, given a finding of sufficient cause for a stop, the procedures followed would have been permissible. Furthermore, in the case at bar the police had reason to believe that a gun had been used only minutes earlier, not three days before the stop. Another case cited by defendant, *People v. Robinson*

(1974), 23 Ill. App. 3d 955, 320 N.E.2d 388 (abstract), *rev'd on other grounds* (1976), 62 Ill. 2d 273, 342 N.E.2d 356, is also clearly distinguishable. The appellate court did note the fact that the officer approached the defendants with his gun drawn. But in rejecting the State's claim of a legal stop and frisk, they specifically did not decide whether the officer's action of drawing a gun would invalidate the stop and create an arrest situation. The court instead relied on the officer's testimony that he had made an arrest and the fact that he never made a search for weapons, instead choosing to seize a visible weapon. The Illinois Supreme Court did not discuss the stop and frisk issue, deciding only that the officer had probable cause to make an arrest, reversing the appellate court and the trial court on that basis.

Defendant also contends that the testimony at the hearing on the motion to suppress suggests that a full search was made, rather than the limited search allowed pursuant to a valid stop. The officer testified that he conducted "a search for possible weapons for our own protection." We have cited the Illinois statute which permits a "search * * * for weapons." In *Terry* the court limited the permissible search to one " * * * confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (392 U.S. 1, 29, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868.) In the light of these authorities we hold that the search at issue was properly limited in scope and was not, as defendant asserts, a general exploratory search. At the hearing defendant did not choose to elicit from the officer a more complete description of the nature of the search. In argument on the motion the Assistant State's Attorney, without objection, referred to the search as a "Minor intrusion. Frisked them. Patted them." Defendant cannot now seek to prevail with an interpretation not suggested by the testimony or by his argument at the hearing.

The trial judge in the case at bar made no findings of fact and no conclusions of law in sustaining defendant's motion to suppress as required by section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(e)). However, it appears that the ruling was based on a finding of lack of probable cause to make an arrest. We need not decide whether probable cause existed for an arrest when the search was initiated since we have determined that the search was properly limited in scope and was pursuant to a proper investigatory stop.

For the reasons given, the judgment of the circuit court of Cook County is reversed.

Reversed.

DIERINGER, P. J., and JOHNSON, J., concur.