THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAMONT WARE, Defendant-Appellant.

First District (2nd Division)   No. 1—92—3685

Opinion filed June 7, 1994.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Celeste Stewart Stack, and Catherine Chaskin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his convictions by a jury on two counts of first degree murder. He questions whether the circuit court erred in (1) denying his motion to quash his arrest and suppress evidence; (2) barring evidence that a witness submitted to a polygraph examination; and (3) allowing certain photographs to be published to the jury.

On November 12, 1990, David Williams, an employee at McDonald's Fishery, opened the store and found the bodies of Ulysses McDonald (McDonald), who owned the fishery, and Leroy Taylor (Taylor), who cleaned and slept at the store. Each had died from single gunshot wounds to the head. The bullet removed from Taylor's head was .32 caliber; the bullet fragments removed from McDonald could not be identified. Both bullets were mangled and could not be linked to a particular weapon.

On December 25, 1990, Luther Ware, defendant's uncle, told the police about an argument he had with defendant in which defendant stated that he had killed somebody and did not want to kill again. When the police questioned defendant, he confessed to murdering McDonald and Taylor, claiming he shot McDonald over a $15 debt.

Defendant's confession revealed he had known McDonald since 1987 and helped cook and sell food at the store. On November 10, 1990, defendant went to the fishery and spent the day cooking, drinking and smoking a marijuana and cocaine mixture with McDonald and Taylor. He felt that McDonald was taking more than his share of the marijuana. Later in the evening, McDonald removed a .32-caliber handgun from his waistband and placed it in a drawer. When McDonald left the room, defendant took the handgun from the drawer and put it in his own pocket, hiding it there for approximately one-half hour to an hour because he needed time to decide whether to shoot McDonald. Defendant was angry with McDonald because the latter had forced him to engage in oral sex with him in April 1988. Defendant confessed that "everything began to come down on him" and when the opportunity came "he would have to do what he had to do." Sometime between 12:30 a.m. and 1 a.m., he shot McDonald once in the head from a distance of three feet. Taylor, who had been asleep, awoke and defendant shot him once in the eye. Defendant claimed that he shot Taylor because he did not want to be identified later.

Defendant wiped off everything that might have his fingerprints, left, locked the front door and threw away the keys, as well as the two expended bullet shells. He then walked to 61st and Calumet nearby and attempted to sell the handgun, but was arrested for unlawful use of the weapon. At the time of his arrest, the bodies of

McDonald and Taylor had not yet been discovered. Defendant repeated his confession to an assistant State's Attorney and told her that he knew he had committed premeditated murder "because he thought about what he did ahead of time." Defendant chose to have his statement recorded by a court reporter but the statement was terminated when he requested an attorney. After terminating the statement, the police photographed defendant.

On January 28, 1992, the circuit court heard defendant's motion to quash his November 11, 1990, arrest and suppress the handgun. Chicago police officer David Lemieux testified that on November 11, at approximately 1:30 a.m., he and his partner responded to a radio call reporting a disturbance at 6121 South Calumet Street. Lemieux was familiar with the location because the police frequently made weapon and narcotic arrests at that address. When the officers arrived, Lemieux saw defendant walking quickly out of the vestibule of the building located at that address. Lemieux approached defendant, intending to talk to him. From five feet away, he noticed a bulge in defendant's pocket. Lemieux announced "Police," conducted a protective pat-down of defendant, and felt the outline of a handgun. He reached into defendant's pocket and removed a .32-caliber black revolver. Parenthetically, he added at trial that the revolver contained four, silver-tipped, hollow point bullets.

Defendant testified that as he came out of the vestibule, Officer Lemieux exited his unmarked squad car and called him over. Defendant walked to the police car and voluntarily placed his hands upon it. Lemieux did not ask any questions before searching him. According to defendant, Lemieux found the handgun in the pocket of defendant's inside jacket. After the search, Lemieux told defendant that he knew defendant was carrying a gun. Defendant claimed he purchased the weapon for $40 from a man at the building.

The circuit court denied defendant's motion to quash the arrest and suppress the evidence, finding that Officer Lemieux had a sufficient, articulable suspicion to detain and search defendant.

At trial, Brenda Abbott, McDonald's sister, identified the .32-caliber handgun recovered from defendant as the gun McDonald kept at his store. Louis Munoz, a Chicago police detective, testified that the police found a brown holster and ammunition in a drawer in McDonald's store but did not locate a handgun on the premises. At the close of all the evidence, defendant's objections to the publication to the jury of certain exhibits were overruled. The jury convicted defendant on two counts of first degree murder and he was sentenced to natural life imprisonment.

## I

Defendant argues that the circuit court erred in denying his motion to quash his arrest and suppress evidence of the handgun because Officer Lemieux lacked specific and articulable facts to justify the stop and frisk.

In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the Supreme Court recognized that a police officer may, in appropriate circumstances, approach a person to investigate possible criminal behavior even without probable cause to make an arrest. In Illinois, the *Terry* exception to the probable cause requirement has been codified in section 107—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107—14 (West 1992)), which provides in pertinent part as follows:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions."

To justify an investigative stop, the police must identify specific, articulable facts which, when taken together with natural inferences, make the intrusion reasonable. (*Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *People v. Scott* (1992), 148 Ill. 2d 479, 503, 594 N.E.2d 217.) The facts need not meet probable cause requirements, but they must justify more than a mere hunch. (*Scott*, 148 Ill. 2d at 503; *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.) The facts should be considered from the perspective of a reasonable officer at the time the situation confronted him rather than viewed with analytical hindsight. (*Long*, 99 Ill. 2d at 229.) The circuit court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837.

■ In the present case, a number of specific, articulable facts support the circuit court's judgment that the stop of defendant was reasonable. At the time of the stop, Officer Lemieux and his partner were responding to a disturbance call at 6121 S. Calumet, where the police previously had made weapon and narcotic arrests. Lemieux personally had made arrests at that location for weapon violations. The officers arrived at the building at approximately 1:30 a.m. and observed defendant exiting the precise address to which they had been called. Defendant's behavior in walking quickly from that address was another factor influencing Lemieux's actions. Defendant contends that since the radio call provided the officers with no infor-

mation, they lacked a specific, articulable basis to stop him. The very fact that the call was ambiguous, however, could have been considered as heightening the officers' suspicions, particularly given their experience with that location, the early morning hour, and defendant's conduct in hurrying from the exact address to which they were called.

Defendant mistakenly relies upon *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, for support. In *McGowan*, defendant and his companion were stopped and frisked at 12:50 a.m. in a deserted commercial and industrial area that had been plagued by burglaries. (*McGowan*, 69 Ill. 2d at 75-76.) Both men were dressed in black. (*McGowan*, 69 Ill. 2d at 75.) Although it characterized the case as a close one, the Illinois Supreme Court found the stop reasonable given the area, hour and defendant's dress. (*McGowan*, 69 Ill. 2d at 78-79.) The facts in the present case provide a stronger articulable basis for a stop than the facts in *McGowan*. Here, like *McGowan*, the time of day and the officers' experience in patrolling the area were articulable facts justifying this stop. Moreover, the police were responding to a report of a disturbance at the exact address from which defendant was hurrying. The report of possible criminal activity as well as defendant's suspicious conduct make the instant case factually stronger than the "close call" in *McGowan*. Accordingly, the circuit court's ruling was not against the manifest weight of the evidence since these articulable facts and their natural inferences justified the police stop of defendant.

Defendant insists that the frisk was also invalid. Section 108—1.01 of the Code of Criminal Procedure (725 ILCS 5/108—1.01 (West 1992)) provides in pertinent part as follows:

> "When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned."

A police officer is not always required to ask questions before frisking a suspect legitimately stopped pursuant to *Terry*; the right to frisk, however, does not automatically follow the right to stop. (*People v. Galvin* (1989), 127 Ill. 2d 153, 165, 535 N.E.2d 837.) The officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *Galvin*, 127 Ill. 2d at 165.

■ In the case at bar, it was reasonable for Officer Lemieux to suspect that he and his partner were in danger. When he approached defendant, Lemieux noticed a bulge in defendant's pocket. Given that bulge, as well as Lemieux's knowledge that weapon arrests frequently took place at the address defendant had exited, it was reasonable for Lemieux to conclude that defendant was armed. A reasonably prudent person would be warranted in suspecting danger from an armed individual hurrying at that hour from a notorious location that was the focus of a disturbance call. Therefore, the circuit court's finding that the frisk was reasonable was not manifestly erroneous.

## II

Defendant next contends that the circuit court erred in granting the State's motion *in limine* to exclude evidence of a polygraph test because it limited his examination of a critical witness. The State counters that defendant has waived this issue.

The facts concerning this issue were adduced at trial as follows. David Williams, an employee of McDonald, opened the store on November 12, 1990, and found the bodies. When questioned by detectives, Williams said that he drove by the fishery on November 11, 1990, between 1:45 p.m. and 2:15 p.m. Williams claimed that he saw McDonald inside the store at that time and that McDonald waved to him. At trial, Williams admitted that he lied and never saw McDonald alive the afternoon of November 11, 1990. Williams changed his story after a polygraph test indicated that he was lying. Prior to trial, the court granted the State's motion *in limine* to exclude reference to the polygraph test. Although defendant did not object to the motion at the time it was presented, defendant challenged the court's ruling during trial, arguing that the fact Williams took the test should be admitted to show his state of mind in changing his statement. The circuit court ruled that defense counsel could inquire into why Williams changed his mind and if Williams mentioned the polygraph, the judge would allow this testimony. Defense counsel twice attempted to elicit from Williams the reason he changed his story, but Williams testified that nothing in particular caused him to change his mind.

Both a contemporaneous objection and a specific allegation in a post-trial motion are necessary to preserve an error for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Responsibility for preserving and presenting a sufficient record of the asserted error falls upon the party who makes the assertion of error. (*People v. Smith* (1985), 106 Ill. 2d 327, 334-35, 478 N.E.2d 357.) Therefore, any doubts arising from the incompleteness of the record will be resolved

against the appellant. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 392, 459 N.E.2d 958.

■ In the instant case, defendant failed to object to the State's motion *in limine* to exclude the polygraph examination when it was originally heard by the court. Defendant also failed to raise this issue in a post-trial motion. Finally, defendant did not include in the record on appeal a report of the initial proceedings at which the circuit court granted the State's motion *in limine*. Accordingly, defendant has waived this issue for purposes of review.

Defendant acknowledges that he failed to preserve this issue for review, but insists that the exclusion of the polygraph examination constitutes plain error. A limited exception to waiver is the plain error doctrine (*People v. Carlson* (1980), 79 Ill. 2d 564, 577-78, 404 N.E.2d 233), which is applied where the evidence is closely balanced or the error was of such magnitude as to have deprived defendant of a fair trial. *Carlson*, 79 Ill. 2d at 576-77; *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461.

Defendant's argument that the circuit court's decision to *limit* polygraph evidence constitutes plain error has no precedent. Instead, the *admission* into evidence of polygraph testing of witnesses constitutes plain error. (Emphasis added.) (*People v. Gard* (1994), 158 Ill. 2d 191, 205, 632 N.E.2d 1026.) The circuit court did not err by granting the State's motion to exclude this evidence.

### III

Defendant's final argument is that the circuit court abused its discretion in allowing two sets of photographs to be submitted to the jury.

### A

Defendant first contends that two post-arrest photographs taken of him on December 25, 1990, were not probative of any issue before the jury. The State counters that defendant waived any error regarding a post-arrest photograph taken on November 11, 1990. Although defendant does not contest the November 11 photograph, the State accurately notes that defendant waived any issue with regard to this particular exhibit by failing to either object to its publication at trial or to specifically mention it in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The State also asserts that publication of the two post-arrest photographs taken on December 25, 1990, was relevant to rebut any inference that defendant's confessions were coerced.

Evidence is relevant where it tends to prove a material fact in

issue and its probative value outweighs its prejudicial effect. (*People v. Kannapes* (1990), 208 Ill. App. 3d 400, 404, 567 N.E.2d 377.) The responsibility of weighing the probative value and potentially prejudicial effect of photographs rests with the circuit judge, and his decision as to which evidentiary items should be taken into the jury room will not be disturbed absent a clear showing of abuse. *People v. Lucas* (1989), 132 Ill. 2d 399, 439, 548 N.E.2d 1003.

■ Here, defense counsel raised the issue of the number of hours defendant was in custody prior to his confessions. The photographs, which were taken after defendant confessed, were relevant in rebutting any inference that the confessions were coerced. Moreover, any error in submitting these exhibits to the jury was harmless considering the overwhelming evidence of defendant's guilt. The circuit court did not abuse its discretion in submitting these photographs to the jury.

## B

Defendant also claims that the circuit court abused its discretion in allowing the jury to view 10 pictures of the victims taken at the crime scene.

Whether or not a jury should be allowed to see photographs of a decedent is a decision to be made by the circuit court in the exercise of its sound discretion. (*People v. Henderson* (1990), 142 Ill. 2d 258, 319, 568 N.E.2d 1234.) Such photographs may be probative of the nature and extent of injuries and the force needed to inflict them; the position, condition, and location of the body; the manner and cause of death; to corroborate a defendant's confession; and to aid in understanding the testimony of the witnesses. (*Henderson*, 142 Ill. 2d at 319-20.) Photographs showing the amount of blood on the premises and the condition of the crime scene may also be probative of the circumstances related to the crime. *People v. Bunch* (1987), 159 Ill. App. 3d 494, 511, 512 N.E.2d 748.

■ In the present case, the record suggests that the circuit court did not submit to the jury 2 of the 10 photographs that defendant alleges were prejudicial. The other eight crime scene photographs show the position, condition and location of the bodies inside McDonald's store. The circuit court could have deemed them relevant and assistive to the jurors in deciding whether the physical evidence corroborated defendant's confession and in depicting the crime scene. The circuit court found the blood probative of time of death. Accordingly, the circuit court did not abuse its discretion in submitting these crime scene photographs to the jury.

For the foregoing reasons, we find no bases upon which to disturb defendant's conviction in this case and, accordingly, affirm.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.