No. 2--06--0204          Filed 2/20/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05--CF--2601 |
| JORGE L. MENDEZ, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Jorge L. Mendez, was charged with unlawful possession of a firearm by a felon (720 ILCS 5/24--1.1(a) (West 2004)) and possession of a firearm without a firearm owner's identification card (430 ILCS 65/2(a)(1), 14(c)(3) (West 2004)). Defendant moved to quash his arrest and suppress evidence. The trial court granted his motion. The State appeals, arguing that the police effected a proper investigatory stop. We reverse and remand.

Officer Peterson testified at the suppression hearing. Peterson had been a police officer with West Chicago for two years. According to Peterson, at approximately 3 a.m. on September 4, 2005, he was in the 400 block of Joliet Street in West Chicago. He was standing outside his patrol car, investigating a vehicle that had been burglarized. It was calm outside and there was no noise or vehicular traffic. Peterson heard what he believed to be gunshots coming from the west about 300

to 400 yards away. He immediately got into his squad car, headed north on Joliet Street, and approached Ann Street. Peterson intended to turn onto Ann Street heading west, as that street was the only nearby street that provided access to the west side of town. As he approached Ann Street, Peterson observed a vehicle approaching the intersection from the west. Approximately five to six seconds had elapsed since he got into his vehicle, and he had traveled less than 100 yards, when he met the other vehicle at the intersection. The car was moving at a "normal" rate of speed. The officer observed three individuals in the vehicle and made direct eye contact with the driver. The driver had an expression of shock on his face, with eyes widened and jaw clenched. Peterson turned his vehicle around and initiated an investigatory stop.

Defendant was in the front passenger seat of the vehicle. As the officer approached the vehicle, he observed a baseball bat near the center console of the car. Peterson scanned the outside of the vehicle with his flashlight and observed two spent shell casings, one where the hood met the window, and another on the trunk lid. Peterson believed that this car was directly related to the gun shots.

Peterson instructed the occupants to exit the vehicle. A cursory search performed on defendant revealed no weapons. The officer searched the inside of the vehicle but found no weapons. However, after all the occupants were out of the vehicle, Peterson conducted an investigation and recovered certain items of evidence that could be used in a criminal prosecution against defendant.

At the conclusion of the hearing, the trial court granted the motion to quash arrest and suppress evidence.

The State moved to reconsider. The trial court denied the motion, noting that there were several other east/west streets in the vicinity. The State filed a certificate of impairment, and it appeals pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).

Initially, we note that defendant did not file a brief. However, as the issue can be decided without an appellee's brief, we may decide the merits of the appeal. First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976); People v. Ortiz, 317 Ill. App. 3d 212, 219 (2000).

We begin our analysis by addressing the standard of review. We accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; however, we review de novo the ultimate ruling. People v. Sorenson, 196 Ill. 2d 425, 431 (2001); People v. Marchel, 348 Ill. App. 3d 78, 79 (2004). Because there is no challenge to the officer's version of events, we need determine only whether, as a matter of law, his testimony satisfies the requirements for a valid investigatory stop. See People v. Delaware, 314 Ill. App. 3d 363, 367 (2000).

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; Sorenson, 196 Ill. 2d at 432. Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the fourth amendment. People v. Garman, 123 Ill. App. 3d 682, 684 (1984). "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." Sorenson, 196 Ill. 2d at 432. However, under the limited exception recognized by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884 (1968), where a police officer observes unusual conduct

that leads him reasonably to conclude in light of his experience that criminal activity may be afoot, the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. Marchel, 348 Ill. App. 3d at 80; see also 725 ILCS 5/107--14 (West 2004) (codification of Terry, providing that a police officer, after having identified himself as such, may lawfully stop any person in a public place for a reasonable period of time when he reasonably infers from all the circumstances that the individual is about to commit or has committed an offense).

In order to make such an investigatory stop, "the officer must have a reasonable and articulable suspicion that the person has committed, or is about to commit, a crime." Marchel, 348 Ill. App. 3d at 80. "The facts need not meet probable cause requirements, but they must justify more than a mere hunch." People v. Ware, 264 Ill. App. 3d 650, 654 (1994). The facts supporting the officer's suspicion "should be considered from the perspective of a reasonable officer at the time the situation confronted him rather than viewed with analytical hindsight." Ware, 264 Ill. App. 3d at 654. "[D]ue weight must be given to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience." Marchel, 348 Ill. App. 3d at 80.

There are several factors that tend to give rise to grounds for stopping a suspect soon after an offense is committed. People v. Brown, 88 Ill. App. 3d 514, 519 (1980). " 'No litmus paper test is available to resolve this issue, but yet it is possible to identify several factors which are appropriately taken into account in making this judgment. Generally, it may be said that consideration may properly be given to: (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that

-4-

area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.' " Brown, 88 Ill. App. 3d at 519-20, quoting 3 W. LaFave, Search & Seizure §9.3, at 84 (1978).

Several Illinois courts have held that a police officer may form a reasonable suspicion that an individual was involved in a shooting due to his spatial and temporal proximity to the shots fired. For example, in People v. Lee, 48 Ill. 2d 272 (1971), police officers testified that they were assigned to patrol an area where a gang war was expected to occur. At approximately 9:30 p.m., the officers heard what they believed to be gunshots. Lee, 48 Ill. 2d at 274. Within two minutes and about two blocks away, the officers saw six people walking. There was no one else in the area. Four of the six people were wearing the type of clothing worn by one of the gangs that might have been involved. The officers stopped and frisked all six people. The supreme court found the stop and search reasonable under Terry. Lee, 48 Ill. 2d at 277. The police officers had a reasonable suspicion that the group of people walking in the area of gunfire was involved in the shooting and therefore the court upheld the investigatory stop, including the pat-down search for weapons. Lee, 48 Ill. 2d at 277.

Similarly, in People v. Basiak, 50 Ill. App. 3d 155 (1977), at approximately 2 a.m., an officer on patrol approached the intersection of Elm and Dearborn Streets in Chicago. Basiak, 50 Ill. App. 3d at 156. The officer heard a gunshot that appeared to have originated from around the corner, on Elm Street. Basiak, 50 Ill. App. 3d at 156. The officer drove around the corner and saw the defendant and another man standing by an alley, approximately 100 feet west of Dearborn. There were no other people and no vehicles in the area. The officer stopped and searched the defendant.

The stop was upheld on appeal; the officer had reasonable suspicion that the individuals were involved in the shooting, because he discovered those individuals at the site from which the officer heard the shot fired. Basiak, 50 Ill. App. 3d at 158; see also People v. Bujdud, 177 Ill. App. 3d 396 (1988) (police officer had adequate facts to warrant an investigatory stop, where the officer had knowledge of a nearby shooting, he observed the defendant's vehicle proceeding at an excessive rate of speed away from the vicinity of the shooting, and he observed no other vehicles on the road; although the officer had no information that a car was involved in the incident, it was reasonable for the officer to infer that the suspects would attempt to flee in a car).

The same conclusion is warranted here. The facts that provided a reasonable basis for the stop include: (1) Peterson heard gunshots 300 to 400 yards to the west; (2) on heading west, he had traveled less than six seconds and 100 yards when he observed defendant's vehicle driving from the west; (3) it was 3 a.m. (see Brown, 88 Ill. App. 3d at 520 ("police are justified in making a stop at an early morning hour with a much less comprehensive description of suspects than would be adequate if the stop were made at midday")); (4) there were no other vehicles on the road; and (5) the driver exhibited a look of shock when he saw the officer. In accordance with the cited authorities, the totality of the circumstances supported reasonable suspicion justifying an investigatory stop.

Thus, we reverse the trial court's order quashing defendant's arrest and suppressing evidence, and we remand for further proceedings.

Reversed and remanded.

O'MALLEY and CALLUM, JJ., concur.