# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Schroeder*, 2012 IL App (3d) 110240

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEXANDER SCHROEDER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0240 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | March 26, 2012<br><br>May 22, 2012<br>May 22, 2012 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

On appeal from a conviction for driving an overweight truck on a bridge, defendant forfeited his arguments that the trial court erred in denying his motion to suppress, not suppressing testimony based on the arresting deputy's notes and a videotape, and in denying his motion for a directed finding, since he did not include those arguments in a posttrial motion or request plain error review; however, defendant did request plain error review in his reply brief and on review thereunder, the court upheld the conviction, where the deputy was justified in stopping defendant based on the truck's slow acceleration, its bulging tires, the way the load sat, and the tractor trailer combination, defendant never sought access to the notes or videotape, there was no probability the result would have been different if they had been disclosed, and the trial court's failure to comply with the local rule requiring disclosure was not plain error.

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-TR-092973; the Hon. Roger Rickmon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Scott Pyles (argued), of Rathbun, Cservenyak & Kozol, LLC, of Joliet, for appellant. |
| | James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Laura E. DeMichael (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion. Justices Carter and Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a bench trial, the defendant, Alexander Schroeder, was convicted of driving an overweight truck on a bridge (625 ILCS 5/15-111 (West 2010)). The trial court ordered defendant to pay a $6,280 fine. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant was charged by citation with driving an overweight truck on a bridge. Defendant subsequently filed a motion to suppress evidence. The following evidence was adduced at the hearing on defendant's motion.

¶ 4    Deputy Robert Kikkert was the only witness to testify at the hearing on the motion to suppress. Kikkert was employed by Will County as a deputy sheriff in the traffic division. He had been an officer for 22 years, and the previous year he had stopped roughly 4,000 trucks and written 761 tickets for overweight trucks.

¶ 5    On September 13, 2010, Kikkert issued a citation to defendant. That day, Kikkert was on duty as a truck enforcement officer, assigned to look for overweight trucks. Kikkert was surveying the bridge on Wilmington-Peotone Road when he saw defendant's truck pass over the bridge. The bridge has a 55-foot length limit and 46,000-pound weight limit.

¶ 6    After watching defendant's truck go over the bridge, Kikkert followed the truck and then

stopped it, believing it was in violation of both the length and weight restrictions. Based upon his observations and experience, Kikkert believed defendant's truck was longer than 55 feet. He could tell by looking at the truck that it was over the length limit due to its tractor trailer combination. In following the truck, Kikkert observed a slow acceleration, indicative of an oversized load on the truck. He also observed the bulging of the pneumatic tires and the way the load was sitting on the truck. Knowing the empty weight of the truck and observing the load (containing pallets of salt, rock, or feed), Kikkert believed that the truck was over the weight limit for the bridge.

¶ 7    During the hearing, defense counsel asked the State to produce Kikkert's notes on the traffic stop. Kikkert testified that his notes, which had existed only in the computer system's citation database, had been inadvertently eliminated from Will County's system. A videotape of the stop had been made, but, pursuant to county policy, it was destroyed 90 days after the ticket was issued. Defense counsel asked for the video, having not made any prior request, and argued that the video should not have been destroyed.

¶ 8    The trial court found that the stop was supported by reasonable suspicion and denied defendant's motion to suppress. Specifically, the trial court found that Kikkert was honest in his testimony and that Kikkert testified with some specificity about the stop. The court noted that a stop based upon an officer's conclusion, grounded in his experience, that a vehicle looked even slightly over length would be supported by reasonable suspicion. The court also found that the stop was justified by Kikkert's reasonable belief that the vehicle was overweight. Finally, the court held it would not grant any motion to suppress due to the destruction of the notes and the videotape because no request for discovery had ever been made, nor had the court ordered any, and there was no evidence that the destruction was willful or intended to impair the defendant's ability to defend against the charged offense.

¶ 9    Immediately following the hearing on the motion to suppress, the case proceeded to trial. At trial, the State called Kikkert. The parties stipulated to Kikkert's testimony from the hearing on the motion to suppress as a part of defendant's trial.

¶ 10    Kikkert testified at trial that there are signs prior to the bridge warning that the bridge is coming up, and a sign posted at the bridge about the weight limits. He made 4,000 truck stops and issued 761 citations in 2010. Kikkert stopped defendant's truck and had defendant drive the truck to South Arsenal Road so it could be weighed with Kikkert's portable scales. The scales had been tested and certified by the United States Department of Agriculture. The ground was level and Kikkert made sure the scales all read zero before having defendant drive the truck over the scales so that axle number one was centered on the scales. Kikkert had defendant stop and let the truck sit on the scales, waited for the scales to register out and level out, and then recorded the numbers from the scales. Kikkert then placed a scale under axle two and he placed two scales under axles three on both driver's and passenger's side. He had defendant pull up the truck so the axles were centered on the scales. Kikkert waited for the scales to register out, then wrote down the weights displayed on the scales. Next, Kikkert had defendant pull his trailer (axles four and five) onto the scales. Kikkert recorded the weights of those axles.

¶ 11    Kikkert printed out the weights of the vehicle. He provided defendant with a form

detailing the weights of each axle and containing information about bond. Kikkert then finished the citation on his computer and waited to see what defendant was going to do about bond.

¶ 12    On cross-examination, Kikkert testified that the certification numbers for the scales he used were on the traffic citation. He weighed the truck using the procedures he was trained to use by the State Police and as he had done for a year. He zeros out the scales each time he uses them. The scales perform a self-check when they are turned on, and if there is any problem with the scale, it shows up as an error and Kikkert will not use that scale. During the weighing, Kikkert's radio was off, and the electronics in his cruiser were on. His electronic equipment does not affect the scales because it does not have a radio frequency interference.

¶ 13    The State rested, and defendant moved for a directed finding. During the discussion that followed, Kikkert testified that the traffic ticket was printed out from his computer after he entered the information on it. The ticket was admitted into evidence. It contains the weights of each axle and states that the truck had a gross weight of 78,800 pounds, 32,800 pounds in excess of the 46,000 pound limit. The ticket is verified, with Kikkert certifying under penalty of perjury that the statements set forth in the ticket are true and correct. The trial court denied defendant's motion for a directed finding.

¶ 14    Defendant testified on his own behalf. He testified that the surface where his truck was weighed was not level. He testified that a photograph depicted the uneven surface where his truck was weighed. The photograph was admitted into evidence as defendant's exhibit No. 1.[1]

¶ 15    The defense called Kikkert. Kikkert testified that he had typed the location, weights, and offense into a computer in preparing the ticket. He had transferred that information to the computer from a form he had filled out by hand. Kikkert testified that when a truck is weighed on State Police weight scales, the scale master gives the officer a certified weight ticket that is put on a State Police ticket form. In the case of Kikkert's portable scales, Kikkert serves as the scale master, writing down the weights displayed on the scale and inputting that information into the computer. His scales do not have the capability of printing into the computer. On cross-examination, Kikkert testified that he used the portable scales to measure defendant's truck weights because the nearest open stationary scale was 30 miles away.

¶ 16    In rebuttal, the State called defendant. He testified that he knew what his truck's weight was when he was on the road in question, and it was 78,000 pounds. He saw the signs leading up to the bridge, miles before the bridge and at the bridge, stating that it was a weight-restricted bridge limited to 46,000 pounds.

¶ 17    The State called Kikkert, who testified that the South Arsenal Road was not sloping. Officers often take trucks there to be weighed. Kikkert determines if the road is level by having the truck release its brake while in neutral. The State Police taught Kikkert that if a truck in that situation does not roll, that means the road is level. Kikkert takes trucks to that

---

[1]Defendant's exhibit No. 1 is not included in the record on appeal.

location all the time, and he has never had a problem with a truck rolling. He testified that the weights of the axles on defendant's truck were not erratic from axle to axle and they were not erratic from passenger side to driver's side. The road is level by state standards.

¶ 18      The trial court found that the road was level enough to give an accurate weight and that the weights listed on the ticket had been put in by Kikkert based upon his scale readings. The court noted that defendant's admission of what his truck weighed matched the weight on the ticket. The trial court found defendant guilty and issued a fine of $12,560. After Kikkert asked that the fine be reduced, the court cut the fine in half to $6,280. The ticket was also amended to reflect the reduced fine.

¶ 19      Defendant did not file any posttrial motion. Defendant filed a timely notice of appeal.

¶ 20                                                    ANALYSIS

¶ 21      Defendant alleges the trial court erred in: (1) denying his motion to suppress, (2) not suppressing the testimony of Kikkert regarding events depicted in the notes and videotape, and (3) denying his motion for directed finding. At the outset, the State argues that the defendant has forfeited these arguments because he did not include them in a posttrial motion and he does not request plain error review. In support, the State cites Illinois Supreme Court Rule 341 (eff. July 1, 2008) and our recent decision in *People v. De la Hera*, 2011 IL App (3d) 100301. Defendant, in his reply brief, acknowledges his procedural failures, but submits that "claims of error can [still] be analyzed under the plain error doctrine." Defendant then provides us with a substantive plain error analysis.

¶ 22      While we acknowledge that Rule 341(h)(7) provides that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing" (Ill. S. Ct. R. 341(h)(7)),[2] we note that the supreme court has previously considered a defendant's plain error argument raised for the first time in a reply brief. See *People v. Williams*, 193 Ill. 2d 306, 348 (2000); *People v. Thomas*, 178 Ill. 2d 215, 235 (1997). Consequently, we too will consider defendant's plain error argument in the instant case. Moreover, we find *De la Hera* to be factually distinguishable on the basis that the defendant in *De la Hera* never requested plain error review. Here, defendant did request plain error review, albeit in his reply brief. We now turn to the merits of defendant's appeal.

¶ 23      It is well settled that the plain error doctrine allows a reviewing court to consider unpreserved error when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). However, in addressing a plain error argument, we must first consider whether error occurred at all. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008).

---

[2]Supreme Court Rule 341 is made applicable to criminal appeals by Illinois Supreme Court Rule 612 (eff. Sept. 1, 2006).

¶ 24　　　　　　　　　　　　　　Motion to Suppress

¶ 25　　First, defendant argues that the trial court should have granted his motion to suppress because Kikkert lacked a reasonable and articulable suspicion to justify the traffic stop. In reviewing a motion to suppress on appeal, we are presented with mixed questions of law and fact. *People v. Smith*, 214 Ill. 2d 338, 347 (2005). A trial court's factual determinations and assessment of witness credibility will be reversed on appeal only if manifestly erroneous. *People v. Ramsey*, 362 Ill. App. 3d 610, 614 (2005). The ultimate determination of whether the evidence is suppressed, however, is entitled to *de novo* review. *People v. Nicholas*, 218 Ill. 2d 104, 116 (2005).

¶ 26　　The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment. *People v. Hall*, 351 Ill. App. 3d 501, 503 (2004). In *Terry*, the United States Supreme Court created a limited exception to the requirement that seizures be supported by probable cause. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Under the standards set forth in *Terry*, an officer may briefly detain and question individuals to investigate possible criminal behavior if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" are present. *Terry*, 392 U.S. at 21. This standard is impossible to define with precision. *Ornelas v. United States*, 517 U.S. 690, 695 (1996). However, the United States Supreme Court has held that the level of suspicion necessary to justify a detention under the *Terry* standard is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

¶ 27　　Here, the trial court found the stop was justified by Kikkert's reasonable suspicion that defendant's truck was in violation of both the length and weight restrictions. The court found Kikkert's testimony to be credible. In doing so, the court noted Kikkert's extensive experience in this specific area of law and the fact that Kikkert's belief was grounded upon specific facts he witnessed–the truck's slow acceleration, the truck's bulging tires, the way the truck's load was sitting and the tractor trailer combination. We cannot say that the trial court's factual determinations and assessment of credibility were manifestly erroneous. Therefore, we conclude that the trial court properly denied defendant's motion to suppress.

¶ 28　　In coming to this conclusion, we reject defendant's reliance upon the fact that Kikkert did not cite defendant for an over-length violation. As the trial court correctly observed, an officer may have a reasonable suspicion that an individual is engaging in criminal conduct even if it turns out, upon investigation, that the conduct was innocent. "The facts supporting the officer's suspicion 'should be considered from the perspective of a reasonable officer at the time the situation confronted him rather than viewed with analytical hindsight.' " *People v. Mendez*, 371 Ill. App. 3d 773, 776 (2007) (quoting *People v. Ware*, 264 Ill. App. 3d 650, 654 (1994)). Moreover, Kikkert's testimony regarding the truck's slow acceleration, bulging tires and the way the load was sitting on the truck, in combination with Kikkert's experience, reasonably supports his suspicion that the truck was overweight and, thus, independently was sufficient to justify the stop. Kikkert did not need to believe that the truck was both overweight and overlength. Because both violate Illinois law, either of these beliefs, standing

alone, would have been sufficient to justify the traffic stop.

¶ 29    Finally, we reject defendant's claim that Kikkert immediately initiated the traffic stop when he saw the truck go over the bridge, before observing any indicators that the truck was overweight. The record shows that while Kikkert may have decided to follow the truck based upon his suspicion that it was overlength, he did not initiate the stop at that point in time. Instead, Kikkert testified that he followed the truck during which time he developed a reasonable suspicion of a weight violation. Upon developing this *additional* suspicion, Kikkert effectuated the traffic stop. Kikkert expressly testified that he had "several reasons" for stopping defendant's truck. Since there was no error regarding the trial court's denial of defendant's motion to suppress, a plain error analysis is not necessary.

¶ 30                                  Notes and Videotape

¶ 31    Second, defendant argues that the trial court erred in not suppressing the testimony of Kikkert regarding events depicted in the notes and videotape. A reviewing court will not reverse a trial court's decision regarding the scope of a witness's testimony absent an abuse of discretion. *People v. Allen*, 375 Ill. App. 3d 810, 815 (2007).

¶ 32    Defendant believes suppression of Kikkert's testimony was necessary on three separate grounds. First, defendant contends that the State violated his right to due process by failing to disclose to the defense all exculpatory evidence, as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, the defendant argues that the State violated the *Brady* rule by failing to disclose the notes and videotape. Second, defendant contends that suppression was required because the State violated the rule espoused in *People v. Kladis*, 2011 IL 110920. The holding in *Kladis* provides that a non-due-process discovery violation may be found where the State, without bad faith, destroys relevant evidence after being put on notice of defendant's request for the evidence. Third, defendant contends that suppression was required because the trial court failed to comply with Twelfth Circuit Local Rule 15.09 (12th Judicial Cir. Ct. R. 15.09 (Aug. 3, 2009) (hereinafter, Local Rule 15.09), which requires the trial court to order discovery at first appearance.

¶ 33    To establish a *Brady* violation, the undisclosed evidence must be both favorable to the accused and material. *Brady*, 373 U.S. at 87-88. Favorable evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *People v. Coleman*, 183 Ill. 2d 366, 393 (1998) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). When evidence is only potentially useful, not material exculpatory evidence, a failure to preserve the evidence does not violate due process unless the defendant can show bad faith by the State. *Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (*per curiam*).

¶ 34    Here, we cannot say that there is a " 'reasonable probability that, had the *** [notes and videotape] been disclosed to the defense, the result of the proceeding would have been different.' " See *Coleman*, 183 Ill. 2d at 393 (quoting *United States v. Bagley*, 473 U.S. at 682). Defendant testified that he knew what his truck weighed at the time he was on the road in question. Specifically, he stated it was "78,000 or something." The truck's weight, as recorded by Kikkert, was 78,800 pounds, 32,800 pounds in excess of the 46,000-pound limit.

Defendant admitted that he saw the signs leading up to the bridge, miles before the bridge and at the bridge, stating that it was a weight-restricted bridge limited to 46,000 pounds. In light of these facts, we cannot reasonably say the notes and videotape were "favorable to the accused." See *Brady*, 373 U.S. at 87-88. Thus, defendant is not entitled to relief under *Brady*. Moreover, because defendant acknowledges that "there was no evidence of any bad faith on behalf of the State in the purged evidence," he is not entitled to relief even in the circumstance that the notes and videotape could be considered potentially useful, as opposed to exculpatory. See *Fisher*, 540 U.S. at 548.

¶ 35    Defendant also is not entitled to relief under *Kladis*. In *Kladis*, the defendant was charged with driving under the influence of alcohol. She requested that the State produce the video recording of the stop made by the camera located in the arresting officer's vehicle. The State subsequently destroyed the recording. The trial court granted defendant's motion for sanctions and barred the State from introducing testimony concerning the videotape. The supreme court affirmed. *Kladis*, 2011 IL 110920, ¶ 48. Specifically, the court found that the video recording was relevant. *Kladis*, 2011 IL 110920, ¶ 38. Therefore, upon receiving the written notice to produce the video recording of a traffic stop five days after defendant was arrested–and 25 days before it was destroyed–the State was placed on notice and should have taken appropriate steps to ensure that it was preserved. *Kladis*, 2011 IL 110920, ¶ 38.

¶ 36    Here, defendant did not tender any discovery request for the notes or the tapes. Rather, defendant did not seek access to the notes or videotape until the middle of the hearing on defendant's motion to suppress at which time they had already been destroyed. We therefore find *Kladis* to be factually distinguishable. The instant case simply does not present us with a situation where defendant requested evidence and the State subsequently destroyed it.

¶ 37    Defendant also claims he is entitled to relief under Local Rule 15.09 which provides:

"In all misdemeanor and aggravated traffic cases discovery in accordance with *People v. Schmidt* shall be ordered by the Court at first appearance, without the necessity of a formal written motion." 12th Judicial Cir. Ct. R. 15.09 (Aug 3, 2009).

¶ 38    The supreme court in *People v. Schmidt*, 56 Ill. 2d 572, 575 (1974), stated:

"The State is required to furnish defendants in misdemeanor cases with a list of witnesses [citation], any confession of the defendant [citation], evidence negating the defendant's guilt [citation], and *** the results of the breathalyzer test [citation]. Additionally, the report which the defendant seeks will be available at trial for use in impeachment of the prosecution witness who prepared it. [Citation.]"

¶ 39    The trial court did not order discovery in this case. Thus, we find the trial court committed error in failing to comply with Local Rule 15.09. Our inquiry, however, does not end there as we still must determine whether the trial court's failure to order discovery constitutes plain error.

¶ 40    Upon review, we find the evidence is not closely balanced. We also find that the trial court's error in failing to order discovery was not so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process. Both of these findings are based upon the fact that defendant admitted, at trial, that he knew that his truck weighed approximately 78,000 pounds. Defendant also admitted that he knew the maximum allowed

weight was 46,000 pounds. In light of these admissions, we cannot say that the trial court's failure to comply with Local Rule 15.09 constitutes plain error.

¶ 41                                                      Directed Finding

¶ 42        Finally, defendant argues that the trial court erred in not granting his motion for directed finding. "It is well settled that if a defendant chooses to present evidence following the denial of his motion for a directed finding at the close of the State's evidence, he waives any error resulting from the trial court's ruling on the motion unless he renews his motion at the close of all evidence." *People v. Cazacu*, 373 Ill. App. 3d 465, 473 (2007).

¶ 43        Here, the record clearly shows that defendant did not renew his motion for directed finding at the close of evidence and thus waived any error resulting from the trial court's ruling. We reject defendant's contention that simply asserting, during closing argument, that the State failed to meet its burden of proof constitutes a valid renewal of his motion for directed finding. Acceptance of such a position would in essence abolish any formal renewal requirement in light of the fact that the vast majority of criminal closing arguments include challenges to the State's evidence. In coming to this conclusion, we note that this case has been notable for other procedural failures by defendant–failure to file a posttrial motion and failure to request plain error review in his initial appellate brief. We will not excuse defendant's procedural failure to renew his motion for directed finding at the close of evidence.

¶ 44        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 45        Affirmed.